## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____
)
PARNELL COLVIN,                          )
)
       Petitioner,                  )
)
       v.                           )    Case No. 21-71422
)
NATIONAL LABOR RELATIONS BOARD;  )
UNITED STATES OF AMERICA,                )
)
       Respondent.                  )
_____)

## MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND TO STAY BRIEFING AND THE NATIONAL LABOR RELATIONS BOARD'S OBLIGATION TO FILE THE RECORD

To the Honorable Judges of the United States
   Court of Appeals for the Ninth Circuit:

     Respondent, the National Labor Relations Board ("NLRB"),
respectfully submits this Motion to Dismiss the Petition for Review filed
by *pro se* Petitioner Parnell Colvin ("Colvin"), and to stay briefing and
the NLRB's obligation to file the record pending the Court's disposition
of the Board's Motion to Dismiss.

     Colvin asks this Court to review the decision of the NLRB's
General Counsel not to issue an unfair labor practice ("ULP") complaint

for alleged violations of the National Labor Relations Act, 29 U.S. §§ 151-169 (the "Act"). The Act, however, vests the General Counsel with "final authority" over prosecutorial decisions. 29 U.S.C. § 153(d). Consequently, this Court lacks subject-matter jurisdiction to review the General Counsel's refusal to issue a ULP complaint and should dismiss Colvin's Petition.

On January 11, 2022, the NLRB solicited Colvin's position on this motion, who responded the same day stating he opposes it.

## BACKGROUND

### A. The NLRB's Unfair Labor Practice Process

An individual, employer, or union may initiate a ULP proceeding by filing a charge with the Regional Director for the Region in which the alleged unfair labor practice occurred.[1] The Regional Director, acting on behalf of the General Counsel, then investigates the charge to determine whether it has merit and whether to issue a complaint.[2] Should the General Counsel issue a complaint, "it may be disposed of by

_____

[1] *See* 29 C.F.R. § 101.2.

[2] 29 C.F.R. §§ 101.2-101.8, 102.9-102.15.

withdrawal before hearing, settlement, or formal adjudication."[3] If the case continues to formal adjudication, the Region conducts a hearing before an administrative law judge, whose decision is subject to review by the Board. Ultimately, the Board issues a decision and order, constituting the final agency determination. At this point, the Board's decision and order becomes reviewable in the appropriate federal court of appeals pursuant to Sections 10(e) and (f) of the Act.[4]

In view of this procedure, a decision of the General Counsel not to issue a complaint plainly does not constitute a final Board order under the Act.[5] The "[R]egional [D]irector may, in his discretion, dismiss [a ULP charge]" in the absence of sufficient evidence to warrant issuing a complaint.[6] A charging party's only opportunity to appeal the Regional Director's decision is to the General Counsel him or herself.[7] If the General Counsel denies this appeal, a party may file a motion for

---

[3] *NLRB v. United Food & Commercial Workers Union, Local 23* (*UFCW, Local 23*), 484 U.S. 112, 119 (1987).

[4] 29 U.S.C. § 160(e)–(f).

[5] 29 U.S.C. § 160(f).

[6] *UFCW, Local 23*, 484 U.S. at 118.

[7] *See* 29 C.F.R. § 101.6.

reconsideration of the General Counsel's decision, which "must state with particularity the error requiring reconsideration."[8] The General Counsel will not entertain further motions for reconsideration, absent "unusual situations where the moving party can establish that new evidence has been discovered which could not have been discovered by diligent inquiry prior to the first reconsideration."[9] The Act provides for no further review of the General Counsel's refusal to issue a complaint, by either the Board or the courts.[10]

## B. Colvin's Unfair Labor Practice Charge and the Instant Petition for Review

Colvin filed the ULP charges at issue in this appeal in NLRB Region 28 on May 29, 2018, in Case No. 28-CB-221154 ("the May 2018 ULP") and April 11, 2019, in Case No. 28-CB-239705 ("the April 2019 ULP"). Colvin filed both charges against his labor union, Laborers International Union of North America, Local 872, AFL-CIO ("LIUNA"),

---

[8] *See* 29 C.F.R. § 102.19(c).

[9] *Id.*

[10] *UFCW, Local 23*, 484 U.S. at 129, 131-32.

alleging that LIUNA would not allow him to cease making dues contributions. Exhibit A-1, attached.

The May 2018 ULP alleged that LIUNA violated Section 7 of the Act by refusing to process Colvin's request "to revoke his supplemental Union dues for arbitrary or discriminatory reasons or in bad faith."[11] The April 2019 ULP alleged that LIUNA violated Section 7 of the Act and Section 302(c)(4) of the Labor Management Relations Act by receiving, accepting, and retaining his "supplemental dues deducted pursuant to dues checkoff authorizations that interfere with the right of employees to revoke their dues check-off [*sic*] authorizations at least once per year and upon expiration of the applicable collective-bargaining agreement." Exhibit A-2, attached.

On May 7, 2020, Regional Director Cornele A. Overstreet issued a complaint based on Colvin's allegations in Case Nos. 28-CB-221154 and 28-CB-239705, consolidated with two additional case numbers not at

---

[11] The forms of labor organization conduct that constitute unfair labor practices, which infringe on Section 7 rights, are set forth in Section 8(b) of the Act. 29 U.S.C. §158(b).

issue in this appeal.[12] Exhibit B, attached. On September 15, 2020, Acting Regional Director Barbara B. Baynes issued a First Amended Consolidated Complaint incorporating amendments to the case numbers not at issue in this appeal, and scheduling a hearing for October 27, 2020; the allegations in Case Nos. 28-CB-221154 and 28-CB-239705 were not amended. Exhibit C, attached. On October 9, 2020, a Second Amended Consolidated Complaint issued. Exhibit D, attached.

By motion dated October 12, 2020 ("Motion to Proceed"), Colvin requested that the hearing proceed as scheduled on October 27, 2020. Exhibit E, attached. Colvin's Motion to Proceed asserted that LIUNA's refusal to process his request to revoke his supplemental dues checkoff authorization violated NLRB precedent as established by *Bethlehem Steel*, 136 NLRB 1500 (1962).

---

[12] The complaint consolidated four cases for hearing: 28-CB-221154, 28-CB-239705, 28-CB-239339, and 28-CB-241831. Neither Case No. 28-CB-239339 nor Case No. 28-CB-241831 are at issue in this appeal. By order dated August 26, 2021, which is described further below at pp. 6-7, Regional Director Overstreet withdrew all allegations except those alleged in Case No. 28-CB-239339 and severed Case No. 28-CB-239339 from the other three charges. Case No. 28-CB-239339 remains pending and awaiting hearing.

On October 15, 2020, Regional Director Overstreet issued an order indefinitely postponing the hearing to permit the Region to investigate the merits of another ULP raising related allegations. Exhibit F, attached. On August 26, 2021, Regional Director Overstreet issued an order withdrawing the allegations in Case Nos. 28-CB-221154 and 28-CB-239705.[13] Exhibit G, attached. On the same date, the Regional Director sent dismissal letters explaining the basis for dismissing the allegations in these two cases. Using identical language in both dismissal letters, Regional Director Overstreet explained:

> I found merit to the charge and issued a complaint based on a directive, in Memorandum GC 19-04, "Unions' Duty to Properly Notify Employees of Their *General Motors*/*Beck* Rights and to Accept Dues Checkoff Revocations after Contract Expiration" (Feb 22, 2019) (GC 12-04), for Regions to urge the National Labor Relations Board to overturn *Frito-Lay*, 243 NLRB 137 (1979), which permits unions to restrict revocation of dues check-off authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement.
>
> Following issuance of the complaint, in Memorandum GC 21-02, "Recission of Certain General Counsel Memoranda" (Feb. 1, 2021), the Acting General Counsel rescinded Memorandum GC 19-04. Based on extant law, the Union's restricting revocation of members' supplemental dues checkoff authorizations to window

---

[13] As noted in footnote 12 above, Regional Director Overstreet's August 26, 2021 order also withdrew the allegations as to Case No. 28-CB-241831, while permitting Case No. 28-CB-239339 to proceed to hearing.

periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement was lawful. I have therefore issued an order severing this case from the complaint and withdrawing the related complaint allegations, and I have decided to dismiss your charge.

Regional Director Overstreet consequently dismissed, and declined to issue a complaint including, those charges. Exhibits I, J, and K, attached.

By letter dated September 6, 2021, Colvin appealed Regional Director Overstreet's dismissal to the General Counsel's Office of Appeals. Colvin's appeal accused Regional Director of "playing politics" and delaying action on his ULP charges to wait "for the outcome of the presidential elections and when Biden won that meant a new general counsel could be put in place." Without reference to any legal authority, Colvin claimed that the change in General Counsel should not have resulted in the withdrawal of the complaints in his cases. He claimed he "should be entitled to the view at the time that the regional director originally found unfair labor practice [*sic*] by the union. The regional director simply changed his position because of the new general counsel." Colvin ultimately demanded that "the original complaint [be]

reissued so I can have due process of law and have my day in court to argue in front of a judge." Exhibit L, attached.

On November 19, 2021, Director Mark E. Arbesfeld of the Office of Appeals issued a final denial of Colvin's appeal. Director Arbesfeld explained that in withdrawing the complaint,

> [t]he Acting General Counsel exercised his unreviewable final authority under Section 3(d) of the Act, which includes not only authority to decide whether to issue unfair labor practice complaints, but also, in some circumstances, authority extending beyond the point at which a complaint has issued, including a purely prosecutorial decision to withdraw a complaint. See, *Sheet Metal Workers International Association, Local Union 28, AFL-CIO*, 306 NLRB 981, 982 (1992). Since GC Memoranda 19-01, 19-04 and 19-06 were rescinded, it was proper for the Regional Director to revise his determination, reevaluate the evidence, and proceed according to current law and guidance. The Regional Director properly exercised his discretion in finding that extant law did not support that the Union violated its duty of fair representation.

Arbesfeld additionally reiterated the reasoning in the Regional Director's August 26, 2021 letter. Exhibit M, Attached.

Colvin initiated the instant appeal before this Court on December 9, 2021. Dkt. Entry 1-5.

## ARGUMENT

This Court should dismiss the petition due to the Court's lack of subject-matter jurisdiction to review the General Counsel's refusal to

issue a ULP complaint. It is a "fundamental precept" that federal courts have limited jurisdiction and these limitations, "whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."[14] Courts are obligated to confirm that they have subject-matter jurisdiction over actions before them.[15] Moreover, the burden of establishing that a case falls within the limited jurisdiction of federal courts "rests upon the party asserting jurisdiction."[16]

Here, Colvin cannot satisfy that burden because his claim arises from the General Counsel's decision not to issue an administrative ULP complaint based on his allegations. The General Counsel's prosecutorial discretion in refusing to issue a ULP complaint is not subject to judicial review in any court.[17] Nearly every circuit court, including the Ninth Circuit, has consistently held that the General Counsel's decision not to

---

[14] *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).

[15] *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017).

[16] *Kokkomen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[17] *See UFCW, Local 23*, 484 U.S. at 129, 131-32.

issue a ULP complaint is an unreviewable act of prosecutorial discretion.[18]

Further, long-settled interpretation of the Act holds that a General Counsel's decision not to issue a ULP complaint is unreviewable. Section 3(d) of the Act provides, in pertinent part, that the General Counsel "shall have *final authority*, on behalf of the Board, in respect of the investigation of charges and issuance of complaints."[19]

---

[18] *See Saez v. Goslee*, 463 F.2d 214, 214-15 (1st Cir. 1972) ("For a quarter of a century [Section 3(d) of the Act] has been uniformly interpreted to mean that federal courts have no jurisdiction to review the General Counsel's refusal [to issue a ULP complaint]"); *Williams v. NLRB*, 105 F.3d 787, 791 n.3 (2d Cir. 1996); *Terminal Freight Coop. Ass'n v. NLRB*, 447 F.2d 1099, 1101-02 (3d Cir. 1971); *Wellington Mill Div., West Point Mfg. Co. v. NLRB*, 330 F.2d 579, 590-91 (4th Cir. 1964); *Smith v. Local No. 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 747 (5th Cir. 1974) (acknowledging General Counsel's refusal to issue complaint "is not subject to review by any court"), *adopted as binding under Bonner v. City of Prichard, Ala.*, 661 F.2d, 1206, 1207 (11th Cir. 1981) (adopting Fifth Circuit precedent issued prior to Sept. 30, 1981); *Echols v. NLRB*, 252 F.2d 224, 228 (6th Cir. 1975); *Sparks v. NLRB*, 835 F.2d 705, 706 (7th Cir. 1987) ("[T]he principle that the decision by the General Counsel of the Labor Board not to file an unfair labor practices complaint is not judicially reviewable is a bedrock principle of labor law"); *Braden v. Herman*, 468 F.2d 592, 593 (8th Cir. 1972); *General Drivers, Chauffers & Helpers, Local 886 v. NLRB*, 179 F.2d 492, 495 (10th Cir. 1950); *Bandlow v. Rothman*, 278 F.2d 866 (D.C. Cir. 1960).

[19] 29 U.S.C. § 153(d) (emphasis added).

The Supreme Court has consistently found this "final authority" to preclude judicial review.[20] In *Sears*, the Supreme Court described the "unreviewable authority" delegated by Congress to the General Counsel to determine whether to issue a complaint:

> [When] he decides not to issue a complaint, no proceeding before the Board occurs at all. The practical effect of this administrative scheme is that a party believing himself the victim of an unfair labor practice can obtain neither adjudication nor remedy under the labor statute without first persuading the Office of General Counsel that his claim is sufficiently meritorious to warrant Board consideration.[21]

Indeed, this Court stated that, "[t]he legislative history of section 3(d) [of the Act] confirms that the General Counsel's prosecutorial decisions are not subject to review by the Board or by a court."[22] Thus precedent by this and other courts of appeals recognizes this rule and likewise requires the dismissal of a case seeking review of a General Counsel's decision to dismiss a charge rather than issue a complaint.[23]

---

[20] *See UFCW, Local 23*, 484 U.S. at 124-26; *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 316 (1979); *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 138, 155 (1975); *Vaca v. Sipes*, 386 U.S. 171, 182 (1967).

[21] 421 U.S. at 138-39.

[22] *Lubbers*, 681 F.2d at 603; *see also Baker*, 691 F.2d at 1293-95.

[23] *See supra* n.18; *see also NLRB v. Combined Century Theatres, Inc.*, 278 F.2d 306, 309 n.2 (2d Cir. 1960) ("The refusal of the Regional

That is the case here. Colvin seeks review of the General Counsel's refusal to issue a complaint regarding his unfair labor practice charges. This decision is an unreviewable act of prosecutorial discretion and not a judicially reviewable "final order" of the Board. This Court therefore lacks subject-matter jurisdiction and should dismiss Colvin's Petition.

## CONCLUSION

For the foregoing reasons, the NLRB respectfully requests that the Court grant the NLRB's motion to stay briefing and filing the record, and its motion to dismiss Colvin's Petition in its entirety.

Respectfully submitted,

**NATIONAL LABOR RELATIONS BOARD**

DAWN L. GOLDSTEIN
*Assistant General Counsel*

---

Director and General Counsel to issue a complaint . . . is final and unappealable."); *Jackman v. NLRB*, 784 F.2d 759, 764 (6th Cir. 1975) ("The authority to initiate and prosecute complaints granted to the General Counsel by Section 3(d) must include the power to determine whether a complaint can be successfully prosecuted and, if he thinks not, to drop it." [cleaned up]); *Baker v. Int'l All. of Theatrical State Emps.*, 691 F.2d 1291, 1293-95 (9th Cir. 1982); *Patent Office Pro. Ass'n v. FLRA*, 128 F.3d 751, 753 (D.C. Cir. 1997) (reaffirming the court's long-held view that "decisions of the General Counsel of the [NLRB] whether to issue complaints are not subject to review by this court").

Tel: (202) 273-2936
Dawn.Goldstein@nlrb.gov

MICHAEL BERKHEIMER
*Supervisory Attorney*
Tel: (202) 273-3771
Michael.Berkheimer@nlrb.gov

s/Andrew  J. Ziaja

ANDREW J. ZIAJA
*Trial Attorney*
Tel: (202) 273-4399
Fax: (202) 273-1088
Andrew.Ziaja@nlrb.gov

Contempt, Compliance and Special Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C.  20003

Dated at Washington, D.C., this
19th day of January 2022

## CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULES OF APPELLATE PROCEDURE 27(d)(2) and 32(g)

I hereby certify pursuant to Federal Rule of Appellate Procedure ("FRAP") 32(G) that this motion is in compliance with the 5,200 word limit in FRAP 27(d)(2). According to the word count function in Microsoft Word, this motion is 2,585 words, excluding the caption, signature blocks, and the documents authorized by FRAP 27(a)(2)(B).

s/Andrew J. Ziaja

ANDREW J. ZIAJA
*Trial Attorney*
Contempt, Compliance, and Special Litigation Branch
1015 Half St. SE, 4th Floor
Washington, DC 20003
Tel: (202) 273-4399
Fax: (202) 273-1088
Andrew.Ziaja@nlrb.gov

Dated at Washington, D.C., this
19th day of January 2022

## STATEMENT OF RELATED CASES
## PURSUANT TO CIRCUIT RULE 28-2.6

I hereby certify that I am unaware of any related cases currently pending in this court other than the case identified in the initial briefs filed by the other parties.

s/Andrew  J. Ziaja

ANDREW J. ZIAJA
*Trial Attorney*
Contempt, Compliance, and Special Litigation Branch
1015 Half St. SE, 4th Floor
Washington, DC 20003
Tel: (202) 273-4399
Fax: (202) 273-1088
Andrew.Ziaja@nlrb.gov

Dated at Washington, D.C., this
19th day of January 2022

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to

Dismiss was filed with the Clerk of the Court using the CM/ECF system on

January 19, 2022, and served on that same day pursuant to Federal Rule of

Appellate Procedure 25(c)(1)(B) via US Postal Service to:

**Parnell Colvin**
6681 Tara Avenue
Las Vegas, NV 89146


s/Andrew  J.  Ziaja
Andrew J. Ziaja
*Trial Attorney*
Contempt, Compliance, and Special Litigation Branch
1015 Half St. SE, 4th Floor
Washington, DC 20003
Tel: (202) 273-1088
Fax: (202) 273-4244
Andrew.Ziaja@nlrb.gov


Dated at Washington, D.C., this
19th day of January 2022

| UNITED STATES OF AMERICA | DO NOT WRITE IN THIS SPACE | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD | Case | Date filed |
| **CHARGE AGAINST LABOR ORGANIZATION OR ITS AGENTS** | 28-CB-221154 | 5/29/2018 |

INSTRUCTIONS: File an original of this charge with the NLRB Regional Director of the region in which the alleged unfair labor practice occurred or is occurring.

### 1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT

| a. Name | b. Union Representative to Contact |
|---|---|
| Laborers International Union of North America Local 872, AFL-CIO | Tommy White, Business Manager |

| c. Address | d. Tel. No. (702)452-9410 | e.e. Cell No. |
|---|---|---|
| 2345 Red Rock Street, Suite 330 Las Vegas, NV 89146 | f. Fax No. (702)452-4262 | g. e-Mail |

h. The above-named labor organization or its agents have engaged in and are engaging in unfair labor practices within the meaning of section 8(b), subsection(s) (1)(A) of the National Labor Relations Act, and these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act, or are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the past six months, the above-named labor organization has restrained and coerced employees in the exercise of rights protected by Section 7 of the Act by refusing to process member Parnell Colvin's request to revoke his supplemental Union dues for arbitrary or discriminatory reasons or in bad faith.

By these and other acts, the above-named labor organization has interfered with, restrained and coerced its members in the exercise of the rights guaranteed by Section 7 of the Act.

| 3. Name of Employer | 4a. Tel. No. | 4b. Cell No. |
|---|---|---|
| Penhall | 4c. Fax No. | 4d. e-Mail |

| 5. Location of Plant Involved (street, city, state, and ZIP code) | 6. Employer representative to contact |
|---|---|
| 477 West University Ave., Las Vegas, NV 89103 | |

| 7. Type of Establishment (factory, mine, wholesaler) | 8. Principal product or service | 9. Number of Workers employed |
|---|---|---|
| Concrete Cutting | Concrete | 10 |

| 10. Full name of party filing charge | 11a. Tel. No. | 11b. Cell No. (503)490-6564 |
|---|---|---|
| Parnell Colvin | 11c. Fax No. | 11d e-Mail pc681@yahoo.com |

| 11. Address of party filing charge (street, city, state, and ZIP code) |
|---|
| 6681 Tara Ave., Las Vegas, NV 89146-5104 |

### 12. DECLARATION

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

| By: _(signature)_ (signature of representative or person making charge) | Parnell Colvin, an Individual Print/type name and title or office, if any | Tel No. Cell No. (503)490-6564 |
|---|---|---|
| Address: 6681 Tara Ave., Las Vegas, NV 89146-5104 | Date: 05/29/2018 | Fax No. e-Mail pc681@yahoo.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

J-2253172641

Exhibit A-1

| UNITED STATES OF AMERICA | DO NOT WRITE IN THIS SPACE | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD | Case | Date filed |
| **CHARGE AGAINST LABOR ORGANIZATION OR ITS AGENTS** | 28-CB-239705 | **April 11, 2019** |

INSTRUCTIONS: File an original of this charge with the NLRB Regional Director of the region in which the alleged unfair labor practice occurred or is occurring.

**1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT**

| a. Name | b. Union Representative to Contact | |
|---|---|---|
| Laborers International Union of North America Local 872, AFL-CIO | Tommy White Business Manager | |

| c. Address | d. Tel. No. | e.e. Cell No. |
|---|---|---|
| 2345 Red Rock Street, Suite 330 Las Vegas, NV 89146 | (702) 452-9410 | |
| | f. Fax No. (702) 452-4262 | g. e-Mail |

h. The above-named labor organization or its agents have engaged in and are engaging in unfair labor practices within the meaning of section 8(b)(1)(a) of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act, or are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

During the past 6 months, the Charged Party has received, accepted, and retained supplemental dues deducted pursuant to dues checkoff authorizations that interfere with the right of employees to revoke their dues check-off authorizations at least once per year and upon expiration of the applicable collective-bargaining agreement under Section 302(c)(4) of the Labor Management Relations Act.

By the above and other acts, the Charged Party has restrained and coerced employees in the exercise of their rights under Section 7 of the Act.

| 3. Name of Employer Various Employers | 4a. Tel. No. | 4b. Cell No. |
|---|---|---|
| | 4c. Fax No. | 4d. e-Mail |

| 5. Location of Plant involved (street, city, state, and ZIP code) | 6. Employer representative to contact |
|---|---|

| 7. Type of Establishment (factory, mine, wholesaler) | 8. Principal product or service | 9. Number of Workers employed |
|---|---|---|

| 10. Full name of party filing charge Parnell Colvin | 11a. Tel. No. | 11b. Cell No. (503) 490-6564 |
|---|---|---|
| | 11c. Fax No. | 11d. e-Mail pc681@yahoo.com |

| 11. Address of party filing charge (street, city, state, and ZIP code) 6681 Tara Ave., Las Vegas, NV 89146-5104 | | |
|---|---|---|

**12. DECLARATION**

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

| By: *(signature)* | Parnell Colvin, an Individual | Tel No. |
|---|---|---|
| (signature of representative or person making charge) | Print/type name and title or office, if any | Cell No. (503) 490-6564 |
| Address: 6681 Tara Ave., Las Vegas, NV 89146-5104 | Date: | Fax No. |
| | | e-Mail pc681@yahoo.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

Exhibit A-2



4012 S Rainbow Blvd Suite K, Las Vegas, NV 89103
(P) 702-876-8858 | (F) 702-876-9573 | (E) nv136@postnet.com
Located at Rainbow and Flamingo in the Sprouts and CVS Shopping Center

# FAX COVER SHEET

**To** Kyler Scheid

**From** Parnell Colvin

**Fax** (602) 640-2178

**Phone Number** (503) 490-6564

**Pages (including this page)** 2

**Date** 4-11-19

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

**Notes** Please call or email me if your need anything more

Thanks Parnell

NOTE: This fax is CONFIDENTIAL and contains information intended only for the party to which it is addressed. No reproduction of this fax may be made without the written consent of the addressee.

Exhibit A-2

LABORERS INTERNATIONAL UNION OF
NORTH AMERICA LOCAL 872, AFL-CIO
(VARIOUS EMPLOYERS, INCLUDING THE
EMPLOYER-MEMBERS OF NEVADA
CONTRACTORS ASSOCIATION/ ASSOCIATED
GENERAL CONTRACTORS ASSOCIATION)

|  |  |  |
|---|---|---|
| **and** | Cases | **28-CB-221154** |
|  |  | **28-CB-239339** |
| **PARNELL COLVIN, an Individual** |  | **28-CB-239705** |
| **and** | Case | **28-CB-241831** |

RICHARD VELA, an Individual

## ORDER CONSOLIDATING CASES, CONSOLIDATED COMPLAINT
## AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor

Relations Board (the Board) and to avoid unnecessary costs or delay, **IT IS ORDERED**

**THAT** Cases 28-CB-221154, 28-CA-239339, and 28-CA-239705, which are based on

charges filed by Parnell Colvin, an Individual (Colvin), against Laborers International Union

of North America Local 872, AFL-CIO (Respondent), and Case 28-CB-241831, which is

based on a charge filed by Richard Vela, an Individual (Vela), against Respondent, are

consolidated.

This Order Consolidating Cases, Consolidated Complaint and Notice of

Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National

Exhibit B

Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Board's

Rules and Regulations, and alleges Respondent has violated the Act as described below. [1]

  1.   (a)   The charge in Case 28-CB-221154 was filed by Colvin on
May 29, 2018, and a copy was served on Respondent by U.S. mail on May 31, 2018.

       (b)   The charge in Case 28-CB-239339 was filed by Colvin on
April 9, 2019, and a copy was served on Respondent by U.S. mail on April 10, 2019.

       (c)   The first amended charge in Case 28-CB-239339 was filed by
Colvin on May 20, 2019, and a copy was served on Respondent by U.S. mail on
May 21, 2019.

       (d)   The charge in Case 28-CB-239705 was filed by Colvin on
April 11, 2019, and a copy was served on Respondent by U.S. mail on April 16, 2019.

       (e)   The charge in Case 28-CB-241831 was filed by Vela on
May 20, 2019, and a copy was served on Respondent by U.S. mail on May 21, 2019.

       (f)   The first amended charge in Case 28-CB-241831 was filed by
Vela on June 13, 2019, and a copy was served on Respondent by U.S. mail on June 14, 2019.

  2.   (a)   At all material times, Nevada Contractors
Association/Associated General Contractors Association (NCA/AGC) has been an

organization composed of various employers in the building and construction industry, one

purpose of which is to represent its employer-members in negotiating and administering

collective-bargaining agreements of Respondent.

---

[1] On May 13, 2019, May 23, 2019, June 13, 2019, June 21, 2019, July 17, 2019 and November 26, 2019, the Region requested that Respondent cooperate in the administrative investigation of the unfair labor practice charges conducted prior to issuance of the instant Consolidated Complaint. Respondent failed to fully cooperate in the investigation by refusing to furnish certain documents relevant to the disposition of the charges.

Exhibit B

(b)     During the 12-month period ending April 9, 2019, employer-members of NCA/AGC, in conducting their business operations described above in paragraph 2(a), purchased and received at their various facilities in the State of Nevada goods valued in excess of $50,000 directly from points outside the State of Nevada.

(c)     At all material times, NCA/AGC and its employer-members have been employers engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

(d)     At all material times, Penhall Company (Penhall) has been a corporation with an office and place of business in Las Vegas, Nevada, and has been a concrete contractor in the construction industry doing commercial, industrial and office construction.

(e)     During the 12-month period ending May 29, 2018, Penhall, in conducting its operations described above in paragraph 2(d), purchased and received at its Las Vegas, Nevada facility goods valued in excess of $50,000 directly from points outside the State of Nevada.

(f)     At all material times, Penhall has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

3.     At all material times, Respondent has been a labor organization within the meaning of Section 2(5) of the Act.

4.     At all material times, the following individuals held the positions set forth opposite their respective names and have been agents of Respondent within the meaning of Section 2(13) of the Act:

| Ian Thienes | - | Dispatcher |
| Dawn Wilson | - | Dispatcher |

Exhibit B

| Tommy White | - | Business Manager |
| Marco Hernandez | - | Business Agent |
| Henry Baker | - | Organizer |
| Dave McCune | - | President |
| Unnamed Agent | - | Counsel |

5.     (a)     At all material times, by virtue of Section 9(a) of the Act, Respondent has been the exclusive collective-bargaining representative of the employees of the employer-members of NCA/AGC described in Article I and II of the Construction Agreement between NCA/AGC and Respondent, effective July 1, 2013, to June 30, 2018 (the Unit).

    (b)     At all material times, Penhall has been a member of NCA/AGC and thereby agreed to recognize Respondent and be bound by the Construction Agreement described above in paragraph 5(a).

    (c)     Article XXIII of the Construction Agreement described above in paragraph 5(a) provides, in pertinent part:

> 3.     VACATION FUND: An Agreement and Declaration of Trust establishing a Laborers Vacation Trust Fund has been executed by the parties which may be subsequently amended and restated by the parties. The Contractors agree to abide by said Agreement and Declaration of Trust and by any rules and regulations or by laws adopted by the Trustees of the Fund, to accept the Trustees appointed by the Associations as their Trustees and, further, to make payments to the Fund in the amount designated in Schedule "B" of this Agreement. Participation by the Contractors in said Trust shall be for the duration of this Agreement and any renewals or extensions thereof or for the period employees are employed under the terms of this Agreement. A minimum of 10% of the total negotiated increase shall be allocated to Vacation Fund.
>
> The Vacation Trust Agreement shall provide for vacation payments only once annually on December 1st, or at such time or under such arrangements as a majority of the Trustees so determine. There shall be no emergency draws.

4

4.     SUPPLEMENTAL DUES

(a)     Subject to the following conditions, the Contractor agrees that each employee may give written authorization to the Board of Trustees of the Laborers Vacation Trust Fund to pay the Union from the funds held by the Trustees on his behalf the amount designated in the authorization card for each hour of his employment (hours worked or paid) in each payroll period commencing July 1, 2005, as special Supplemental Dues owed by the employee to the Union.

(b)     The Union shall bear the entire responsibility for obtaining the written authorization from the employee and furnishing the authorization to the Board of Trustees in a form satisfactory to the Trustees. All costs, expenses and fees of the Board of Trustees, incidental to the accounting, administration, and remittance to the Union of the Supplemental Dues Payment shall be borne solely and entirely by the Union. The Contractors and Union agree to amend the Agreement and Declaration of Trust in the Laborers Vacation Trust for the purpose of authorizing, allocating and distributing the foregoing sums. This provision shall in no way affect the obligation of the Contractor to pay the full amount of vacation contributions specified in this Agreement.

(c)     All written authorizations referred to above shall be irrevocable for a period of one (1) year from the date of the execution and shall renew automatically from year to year thereafter, unless the employee has served written notice upon the Board of Trustees and to the Union, not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year of the period of this Agreement, whichever is sooner, terminating the authorization.

(d)     Since at least December 1, 2018, employees in the Unit have

signed supplemental dues check-off authorizations that provide, in pertinent part:

I hereby authorize the Construction industry and Laborers Vacation Trust Fund to deduct the amount specified in the Master Agreement (or the same or similar agreement to which the Union is a party) from my undisbursed Vacation Benefit, for all hours paid for or worked by me on and after January 1, 1994 and remit said amount directly to the Laborers' International Union of North America, Local No. 872, as a supplemental dues. This authorization may be revoked by me, in writing to the Vacation Trust Fund, not more than twenty (20) days and not less than ten (10) days prior to the expiration of said Laborers' Master Agreement (or such other applicable agreement) or one year

Exhibit B

from the date hereof, whichever is sooner. If not revoked, this authorization shall be deemed as renewed from year to year thereafter.

(e)     Since at least December 1, 2018, pursuant to Article XXIII of the Construction Agreement described above in paragraph 5(d) and the dues check-off authorizations described above in paragraph 5(e), Respondent has received, accepted, and retained supplemental dues deducted from the Vacation Benefit of employees in the Unit and remitted to Respondent.

(f)     The terms of Article XXIII of the Construction Agreement described above in paragraph 5(d) and the dues check-off authorizations described above in paragraph 5(e) interfere with the right of employees to revoke their dues check-off authorizations at least once per year and upon expiration of the applicable collective-bargaining agreement under Section 302(c)(4) of the Labor Management Relations Act.

(g)     The terms of Article XXIII of the Construction Agreement described above in paragraph 5(d) and the dues check-off authorizations described above in paragraph 5(e) discourage employees from refraining from joining or assisting Respondent.

(h)     At all material times, Colvin has been employed by employer-members of NCA/AGC, including Penhall, and has been an employee in the Unit covered by the Construction Agreement described above in paragraph 5(a).

(i)     At all material times, Vela has been employed by employer-members of NCA/AGC and has been an employee in the Unit covered by the Construction Agreement described above in paragraph 5(a).

(j)     About September 24, 1996, Vela signed a supplemental dues check-off authorization containing the terms described above in paragraph 5(e).

Exhibit B

(k)     Since about September 24, 1996, pursuant to Article XXIII of the Construction Agreement described above in paragraph 5(d) and the dues check-off authorization described above in paragraph 5(e), Respondent has received, accepted, and retained supplemental dues deducted from the Vacation Benefit of Vela and remitted to the Union.

(l)     About June 1, 2016, Colvin signed a supplemental dues check-off authorization containing the terms described above in paragraph 5(e).

(m)     Since about June 1, 2016, pursuant to Article XXIII of the Construction Agreement described above in paragraph 5(d) and the dues check-off authorization described above in paragraph 5(e), Respondent has received, accepted, and retained supplemental dues deducted from the Vacation Benefit of Colvin and remitted to the Union.

(n)     On or about March 6, 2018, Colvin asked Respondent for information about how to revoke his supplemental dues check-off authorization.

(o)     Since on or about March 6, 2018, Respondent has failed and refused to provide information to Colvin about how to revoke his supplemental dues check-off authorization, including by failing and refusing to provide him with the actual, specific dates on which he was permitted to revoke his supplemental dues check-off authorization.

(p)     On or about March 6, 2018, Colvin requested in writing to revoke his supplemental dues check-off authorization.

(q)     Since on or about March 6, 2018, Respondent has failed and refused to honor Colvin's revocation of his supplemental dues check-off authorization by

7

continuing to receive, accept, and retain supplemental dues deducted from the Vacation Benefit of Colvin and remitted to the Union.

(r)     On or about March 28, 2019, Vela requested in writing to revoke his supplemental dues check-off authorization.

(s)     Since on or about March 28, 2019, Respondent has failed and refused to provide information to Vela about how to revoke his supplemental dues check-off authorization, including by failing and refusing to provide him with the actual, specific dates on which he was permitted to revoke his supplemental dues check-off authorization.

(t)     Since on or about March 28, 2019, Respondent has failed and refused to honor Vela's revocation of his supplemental dues check-off authorization by continuing to receive, accept, and retain supplemental dues deducted from the Vacation Benefit of Vela and remitted to the Union.

(u)     By engaging in the conduct described above in paragraph 5(a) through 5(t), in connection with its representative status described above in paragraph 5(a), Respondent has failed and refused to represent employees in the Unit, including Colvin and Vela, for reasons that are arbitrary, discriminatory, or in bad faith and has breached the fiduciary duty it owes to employees in the Unit, including Colvin and Vela.

6.     (a)     At all material times, Respondent and various employers engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act, including the employer-members of NCA/AGC (collectively, the Hiring Hall User Employers), have been parties to collective-bargaining agreements requiring that Respondent be the exclusive source of referral for employment with those employers through Respondent's employment referral system, and the Hiring Hall User Employers have recognized the Union as the exclusive

8

collective-bargaining representative of the employees covered by those collective-bargaining agreements.

(b)     Around the end of March 2019, a more precise date not currently known to the General Counsel, Colvin asked Respondent to provide a copy of hiring hall records maintained by Respondent showing the identities of hiring hall users referred for work since about March 14, 2019, to determine whether he has been treated fairly regarding job referrals.

(c)     Since about the end of March 2019, a more precise date not currently known to the General Counsel, Respondent has failed or refused to provide Colvin with the information he requested as described above in paragraph 6(c).

(d)     By engaging in the conduct described above in paragraph 6(a) through 6(c), in connection with its representative status described above in paragraph 6(a), Respondent has failed and refused to represent employees of the Hiring Hall User Employers, including Colvin, for reasons that are arbitrary, discriminatory, or in bad faith and has breached the fiduciary duty it owes to those employees, including Colvin.

7.     By the conduct described above in paragraphs 5 and 6, Respondent has been restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(b)(1)(A) of the Act.

8.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the consolidated complaint. The

Exhibit B

answer must be **received by this office on or before May 21, 2020, or postmarked on or before May 20, 2020**.  Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.  To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions.  Responsibility for the receipt and usability of the answer rests exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21.  If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find,

Exhibit B

pursuant to a Motion for Default Judgment, that the allegations in the consolidated complaint are true.

### NOTICE OF HEARING

**PLEASE TAKE NOTICE THAT** at a date and time to be determined, at the Hearing Room of the National Labor Relations Board, 300 Las Vegas Blvd. South, Suite 2-901, Las Vegas, Nevada, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board. At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this consolidated complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated at Phoenix, Arizona, this 7th day of May 2020.

*/s/ Cornele A. Overstreet*
Cornele A. Overstreet, Regional Director

Attachments

Exhibit B

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
### REGION 28

**LABORERS INTERNATIONAL UNION OF
NORTH AMERICA LOCAL 872, AFL-CIO
(VARIOUS EMPLOYERS, INCLUDING THE
EMPLOYER-MEMBERS OF NEVADA
CONTRACTORS ASSOCIATION/ ASSOCIATED
GENERAL CONTRACTORS ASSOCIATION)**

|  |  |
|---|---|
| **and** | **Cases 28-CB-221154** |
|  | **28-CB-239339** |
| **PARNELL COLVIN, an Individual** | **28-CB-239705** |
|  |  |
| **and** | **Case 28-CB-241831** |

**RICHARD VELA, an Individual**

## FIRST AMENDED CONSOLIDATED COMPLAINT
## AND NOTICE OF HEARING

       This Amended Consolidated Complaint and Notice of Hearing is based on

charges filed by Parnell Colvin (Colvin), an Individual (Colvin) in Cases 28-CB-221154,

28-CB-239339, and 28-CB-239705 against Laborers International Union of North America

Local 872, AFL-CIO (Respondent), and a charge filed by Richard Vela, an Individual (Vela)

in Case 28-CB-241831 against Respondent.  It is issued pursuant to Section 10(b) of the

National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the

Rules and Regulations of the National Labor Relations Board (the Board) and alleges that

Respondent has violated the Act as described below.[1]

---

[1] On May 13, 2019, May 23, 2019, June 13, 2019, June 21, 2019, July 17, 2019 and November 26, 2019, the Region requested that Respondent cooperate in the administrative investigation of the unfair labor practice charges conducted prior to issuance of the instant Consolidated Complaint. Respondent failed to fully cooperate in the investigation by refusing to furnish certain documents relevant to the disposition of the charges.

Exhibit C

1.  (a)  The charge in Case 28-CB-221154 was filed by Colvin on May 29, 2018, and a copy was served on Respondent by U.S. mail on May 31, 2018.

(b)  The charge in Case 28-CB-239339 was filed by Colvin on April 9, 2019, and a copy was served on Respondent by U.S. mail on April 10, 2019.

(c)  The first amended charge in Case 28-CB-239339 was filed by Colvin on May 20, 2019, and a copy was served on Respondent by U.S. mail on May 21, 2019.

(d)  The charge in Case 28-CB-239705 was filed by Colvin on April 11, 2019, and a copy was served on Respondent by U.S. mail on April 16, 2019.

(e)  The charge in Case 28-CB-241831 was filed by Vela on May 20, 2019, and a copy was served on Respondent by U.S. mail on May 21, 2019.

(f)  The first amended charge in Case 28-CB-241831 was filed by Vela on June 13, 2019, and a copy was served on Respondent by U.S. mail on June 14, 2019.

2.  (a)  At all material times, Nevada Contractors Association/Associated General Contractors Association (NCA/AGC) has been an organization composed of various employers in the building and construction industry, one purpose of which is to represent its employer-members in negotiating and administering collective-bargaining agreements of Respondent.

(b)  During the 12-month period ending April 9, 2019, employer-members of NCA/AGC, in conducting their business operations described above in paragraph 2(a), purchased and received at their various facilities in the State of Nevada goods valued in excess of $50,000 directly from points outside the State of Nevada.

Exhibit C

(c)     At all material times, NCA/AGC and its employer-members have been employers engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

(d)     At all material times, Penhall Company (Penhall) has been a corporation with an office and place of business in Las Vegas, Nevada, and has been a concrete contractor in the construction industry doing commercial, industrial and office construction.

(e)     During the 12-month period ending May 29, 2018, Penhall, in conducting its operations described above in paragraph 2(d), purchased and received at its Las Vegas, Nevada facility goods valued in excess of $50,000 directly from points outside the State of Nevada.

(f)     At all material times, Penhall has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

3.     At all material times, Respondent has been a labor organization within the meaning of Section 2(5) of the Act.

4.     At all material times, the following individuals held the positions set forth opposite their respective names and have been agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Ian Thienes | - | Dispatcher |
| Dawn Wilson | - | Dispatcher |
| Tommy White | - | Business Manager |
| Marco Hernandez | - | Business Agent |
| Henry Baker | - | Organizer |
| Dave McCune | - | President |
| Unnamed Agent | - | Counsel |

3

Exhibit C

5.      (a)      At all material times, by virtue of Section 9(a) of the Act, Respondent has been the exclusive collective-bargaining representative of the employees of the employer-members of NCA/AGC described in Article I and II of the Construction Agreement between NCA/AGC and Respondent, effective July 1, 2013, to June 30, 2018 (the Unit).

(b)      At all material times, Penhall has been a member of NCA/AGC and thereby agreed to recognize Respondent and be bound by the Construction Agreement described above in paragraph 5(a).

(c)      Article XXIII of the Construction Agreement described above in paragraph 5(a) provides, in pertinent part:

> 3.      VACATION FUND:  An Agreement and Declaration of Trust establishing a Laborers Vacation Trust Fund has been executed by the parties which may be subsequently amended and restated by the parties. The Contractors agree to abide by said Agreement and Declaration of Trust and by any rules and regulations or by laws adopted by the Trustees of the Fund, to accept the Trustees appointed by the Associations as their Trustees and, further, to make payments to the Fund in the amount designated in Schedule "B" of this Agreement. Participation by the Contractors in said Trust shall be for the duration of this Agreement and any renewals or extensions thereof or for the period employees are employed under the terms of this Agreement. A minimum of 10% of the total negotiated increase shall be allocated to Vacation Fund.
>
> The Vacation Trust Agreement shall provide for vacation payments only once annually on December 1st, or at such time or under such arrangements as a majority of the Trustees so determine. There shall be no emergency draws.
>
> 4.      SUPPLEMENTAL DUES
>
> (a)      Subject to the following conditions, the Contractor agrees that each employee may give written authorization to the Board of Trustees of the Laborers Vacation Trust Fund to pay the Union from the funds held by the Trustees on his behalf the amount designated in the authorization card for each hour of his employment (hours worked or

4

Exhibit C

paid) in each payroll period commencing July 1, 2005, as special Supplemental Dues owed by the employee to the Union.

(b)     The Union shall bear the entire responsibility for obtaining the written authorization from the employee and furnishing the authorization to the Board of Trustees in a form satisfactory to the Trustees. All costs, expenses and fees of the Board of Trustees, incidental to the accounting, administration, and remittance to the Union of the Supplemental Dues Payment shall be borne solely and entirely by the Union. The Contractors and Union agree to amend the Agreement and Declaration of Trust in the Laborers Vacation Trust for the purpose of authorizing, allocating and distributing the foregoing sums. This provision shall in no way affect the obligation of the Contractor to pay the full amount of vacation contributions specified in this Agreement.

(c)     All written authorizations referred to above shall be irrevocable for a period of one (1) year from the date of the execution and shall renew automatically from year to year thereafter, unless the employee has served written notice upon the Board of Trustees and to the Union, not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year of the period of this Agreement, whichever is sooner, terminating the authorization.

(d)     Since at least December 1, 2018, employees in the Unit have

signed supplemental dues check-off authorizations that provide, in pertinent part:

I hereby authorize the Construction industry and Laborers Vacation Trust Fund to deduct the amount specified in the Master Agreement (or the same or similar agreement to which the Union is a party) from my undisbursed Vacation Benefit, for all hours paid for or worked by me on and after January 1, 1994 and remit said amount directly to the Laborers' International Union of North America, Local No. 872, as a supplemental dues. This authorization may be revoked by me, in writing to the Vacation Trust Fund, not more than twenty (20) days and not less than ten (10) days prior to the expiration of said Laborers' Master Agreement (or such other applicable agreement) or one year from the date hereof, whichever is sooner. If not revoked, this authorization shall be deemed as renewed from year to year thereafter.

(e)     Since at least December 1, 2018, pursuant to Article XXIII of

the Construction Agreement described above in paragraph 5(c) and the dues check-off

authorizations described above in paragraph 5(d), Respondent has received, accepted, and

5

Exhibit C

retained supplemental dues deducted from the Vacation Benefit of employees in the Unit and remitted to Respondent.

        (f)      The terms of Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorizations described above in paragraph 5(d) interfere with the right of employees to revoke their dues check-off authorizations at least once per year and upon expiration of the applicable collective-bargaining agreement under Section 302(c)(4) of the Labor Management Relations Act.

        (g)      The terms of Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorizations described above in paragraph 5(d) discourage employees from refraining from joining or assisting Respondent.

        (h)      At all material times, Colvin has been employed by employer-members of NCA/AGC, including Penhall, and has been an employee in the Unit covered by the Construction Agreement described above in paragraph 5(a).

        (i)      At all material times, Vela has been employed by employer-members of NCA/AGC and has been an employee in the Unit covered by the Construction Agreement described above in paragraph 5(a).

        (j)      About September 24, 1996, Vela signed a supplemental dues check-off authorization containing the terms described above in paragraph 5(d).

        (k)      Since about September 24, 1996, pursuant to Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorization described above in paragraph 5(d), Respondent has received, accepted, and retained supplemental dues deducted from the Vacation Benefit of Vela and remitted to the Union.

Exhibit C

(l)     About June 1, 2016, Colvin signed a supplemental dues check-off authorization containing the terms described above in paragraph 5(d).

(m)     Since about June 1, 2016, pursuant to Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorization described above in paragraph 5(d), Respondent has received, accepted, and retained supplemental dues deducted from the Vacation Benefit of Colvin and remitted to the Union.

(n)     On or about March 6, 2018, Colvin asked Respondent for information about how to revoke his supplemental dues check-off authorization.

(o)     Since on or about March 6, 2018, Respondent has failed and refused to provide information to Colvin about how to revoke his supplemental dues check-off authorization, including by failing and refusing to provide him with the actual, specific dates on which he was permitted to revoke his supplemental dues check-off authorization.

(p)     On or about March 6, 2018, Colvin requested in writing to revoke his supplemental dues check-off authorization.

(q)     Since on or about March 6, 2018, Respondent has failed and refused to honor Colvin's revocation of his supplemental dues check-off authorization by continuing to receive, accept, and retain supplemental dues deducted from the Vacation Benefit of Colvin and remitted to the Union.

(r)     On or about March 28, 2019, Vela requested in writing to revoke his supplemental dues check-off authorization.

(s)     Since on or about March 28, 2019, Respondent has failed and refused to provide information to Vela about how to revoke his supplemental dues check-

Exhibit C

authorization, including by failing and refusing to provide him with the actual, specific dates on which he was permitted to revoke his supplemental dues check-off authorization.

(t)     Since on or about March 28, 2019, Respondent has failed and refused to honor Vela's revocation of his supplemental dues check-off authorization by continuing to receive, accept, and retain supplemental dues deducted from the Vacation Benefit of Vela and remitted to the Union.

(u)     By engaging in the conduct described above in paragraph 5(a) through 5(t), in connection with its representative status described above in paragraph 5(a), Respondent has failed and refused to represent employees in the Unit, including Colvin and Vela, for reasons that are arbitrary, discriminatory, or in bad faith and has breached the fiduciary duty it owes to employees in the Unit, including Colvin and Vela.

6.     (a)     At all material times, Respondent and various employers engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act, including the employer-members of NCA/AGC (collectively, the Hiring Hall User Employers), have been parties to collective-bargaining agreements requiring that Respondent be the exclusive source of referral for employment with those employers through Respondent's employment referral system, and the Hiring Hall User Employers have recognized the Union as the exclusive collective-bargaining representative of the employees covered by those collective-bargaining agreements.

(b)     Around the following dates, Respondent implemented a "no-strike / strike rule" that is not found in the Construction Agreement described above in paragraph 5(c):

(1)     March 12, 2019; and
(2)     March 14, 2019.

Exhibit C

(c) The rule described above in paragraph 6(b) does not serve any representational function.

(d) At all material times, Respondent failed to effectively inform its members and non-member hiring hall users of the "no-strike / strike rule" described above in paragraph 6(b).

(e) Around the end of March 2019, a more precise date not currently known to the General Counsel, Colvin asked Respondent to provide a copy of hiring hall records maintained by Respondent showing the identities of hiring hall users referred for work since about March 14, 2019, to determine whether he has been treated fairly regarding job referrals.

(f) Since about the end of March 2019, a more precise date not currently known to the General Counsel, Respondent has failed or refused to provide Colvin with the information he requested as described above in paragraph 6(c).

(g) By engaging in the conduct described above in paragraph 6(a) through 6(f), in connection with its representative status described above in paragraph 6(a), Respondent has failed and refused to represent employees of the Hiring Hall User Employers, including Colvin, for reasons that are arbitrary, discriminatory, or in bad faith and has breached the fiduciary duty it owes to those employees, including Colvin.

7. By the conduct described above in paragraphs 5 and 6, Respondent has been restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(b)(1)(A) of the Act.

8. The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

Exhibit C

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the consolidated complaint. The answer must be **received by this office on or before September 29, 2020, or postmarked on or before September 28, 2020**. Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means

Exhibit C

allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the consolidated complaint are true.

<u>**NOTICE OF HEARING**</u>

**PLEASE TAKE NOTICE THAT** at 9:00 a.m. on **October 27, 2020**, and on consecutive days thereafter until concluded, at a location and by a means and method to be determined, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this amended consolidated complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated at Phoenix, Arizona, this 15th day of September 2020.


 */s/ Barbara B. Baynes*
Barbara B. Baynes, Acting Regional Director


Attachments

Exhibit C

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
### REGION 28

**LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 872, AFL-CIO (VARIOUS EMPLOYERS, INCLUDING THE EMPLOYER-MEMBERS OF NEVADA CONTRACTORS ASSOCIATION/ ASSOCIATED GENERAL CONTRACTORS ASSOCIATION)**

|  |  |
|---|---|
| **and** | **Cases 28-CB-221154** |
|  | **28-CB-239339** |
| **PARNELL COLVIN, an Individual** | **28-CB-239705** |
| **and** | **Case 28-CB-241831** |
| **RICHARD VELA, an Individual** | |

## SECOND AMENDED CONSOLIDATED COMPLAINT
## AND NOTICE OF HEARING

This Second Amended Consolidated Complaint and Notice of Hearing is based on charges filed by Parnell Colvin (Colvin), an Individual (Colvin) in Cases 28-CB-221154, 28-CB-239339, and 28-CB-239705 against Laborers International Union of North America Local 872, AFL-CIO (Respondent), and a charge filed by Richard Vela, an Individual (Vela) in Case 28-CB-241831 against Respondent. It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Respondent has violated the Act as described below.[1]

---

[1] On May 13, 2019, May 23, 2019, June 13, 2019, June 21, 2019, July 17, 2019 and November 26, 2019, the Region requested that Respondent cooperate in the administrative investigation of the unfair labor practice charges conducted prior to issuance of the instant Consolidated Complaint. Respondent failed to fully cooperate in the investigation by refusing to furnish certain documents relevant to the disposition of the charges.

1.    (a)    The charge in Case 28-CB-221154 was filed by Colvin on May 29, 2018, and a copy was served on Respondent by U.S. mail on May 31, 2018.

(b)    The charge in Case 28-CB-239339 was filed by Colvin on April 9, 2019, and a copy was served on Respondent by U.S. mail on April 10, 2019.

(c)    The first amended charge in Case 28-CB-239339 was filed by Colvin on May 20, 2019, and a copy was served on Respondent by U.S. mail on May 21, 2019.

(d)    The charge in Case 28-CB-239705 was filed by Colvin on April 11, 2019, and a copy was served on Respondent by U.S. mail on April 16, 2019.

(e)    The charge in Case 28-CB-241831 was filed by Vela on May 20, 2019, and a copy was served on Respondent by U.S. mail on May 21, 2019.

(f)    The first amended charge in Case 28-CB-241831 was filed by Vela on June 13, 2019, and a copy was served on Respondent by U.S. mail on June 14, 2019.

2.    (a)    At all material times, Nevada Contractors Association/Associated General Contractors Association (NCA/AGC) has been an organization composed of various employers in the building and construction industry, one purpose of which is to represent its employer-members in negotiating and administering collective-bargaining agreements of Respondent.

(b)    During the 12-month period ending April 9, 2019, employer-members of NCA/AGC, in conducting their business operations described above in paragraph 2(a), purchased and received at their various facilities in the State of Nevada goods valued in excess of $50,000 directly from points outside the State of Nevada.

Exhibit D

(c)     At all material times, NCA/AGC and its employer-members have been employers engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

(d)     At all material times, Penhall Company (Penhall) has been a corporation with an office and place of business in Las Vegas, Nevada, and has been a concrete contractor in the construction industry doing commercial, industrial and office construction.

(e)     During the 12-month period ending May 29, 2018, Penhall, in conducting its operations described above in paragraph 2(d), purchased and received at its Las Vegas, Nevada facility goods valued in excess of $50,000 directly from points outside the State of Nevada.

(f)     At all material times, Penhall has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

3.     At all material times, Respondent has been a labor organization within the meaning of Section 2(5) of the Act.

4.     At all material times, the following individuals held the positions set forth opposite their respective names and have been agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Ian Thienes | - | Dispatcher |
| Dawn Wilson | - | Dispatcher |
| Tommy White | - | Business Manager |
| Marco Hernandez | - | Business Agent |
| Henry Baker | - | Organizer |
| Dave McCune | - | President |
| Rogelio Gonzalez | - | Executive Board Member |
| Unnamed Agent | - | Counsel |

Exhibit D

5.  (a)  At all material times, by virtue of Section 9(a) of the Act, Respondent has been the exclusive collective-bargaining representative of the employees of the employer-members of NCA/AGC described in Article I and II of the Construction Agreement between NCA/AGC and Respondent, effective July 1, 2013, to June 30, 2018 (the Unit).

(b)  At all material times, Penhall has been a member of NCA/AGC and thereby agreed to recognize Respondent and be bound by the Construction Agreement described above in paragraph 5(a).

(c)  Article XXIII of the Construction Agreement described above in paragraph 5(a) provides, in pertinent part:

> 3.  VACATION FUND:  An Agreement and Declaration of Trust establishing a Laborers Vacation Trust Fund has been executed by the parties which may be subsequently amended and restated by the parties. The Contractors agree to abide by said Agreement and Declaration of Trust and by any rules and regulations or by laws adopted by the Trustees of the Fund, to accept the Trustees appointed by the Associations as their Trustees and, further, to make payments to the Fund in the amount designated in Schedule "B" of this Agreement. Participation by the Contractors in said Trust shall be for the duration of this Agreement and any renewals or extensions thereof or for the period employees are employed under the terms of this Agreement. A minimum of 10% of the total negotiated increase shall be allocated to Vacation Fund.
>
> The Vacation Trust Agreement shall provide for vacation payments only once annually on December 1st, or at such time or under such arrangements as a majority of the Trustees so determine. There shall be no emergency draws.
>
> 4.  SUPPLEMENTAL DUES
>
> (a)  Subject to the following conditions, the Contractor agrees that each employee may give written authorization to the Board of Trustees of the Laborers Vacation Trust Fund to pay the Union from the funds held by the Trustees on his behalf the amount designated in the authorization card for each hour of his employment (hours worked or

Exhibit D

paid) in each payroll period commencing July 1, 2005, as special
Supplemental Dues owed by the employee to the Union.

(b)     The Union shall bear the entire responsibility for obtaining the
written authorization from the employee and furnishing the
authorization to the Board of Trustees in a form satisfactory to the
Trustees. All costs, expenses and fees of the Board of Trustees,
incidental to the accounting, administration, and remittance to the
Union of the Supplemental Dues Payment shall be borne solely and
entirely by the Union. The Contractors and Union agree to amend the
Agreement and Declaration of Trust in the Laborers Vacation Trust for
the purpose of authorizing, allocating and distributing the foregoing
sums. This provision shall in no way affect the obligation of the
Contractor to pay the full amount of vacation contributions specified in
this Agreement.

(c)     All written authorizations referred to above shall be irrevocable
for a period of one (1) year from the date of the execution and shall
renew automatically from year to year thereafter, unless the employee
has served written notice upon the Board of Trustees and to the Union,
not more than twenty (20) days and not less than ten (10) days prior to
the expiration of each period of one (1) year of the period of this
Agreement, whichever is sooner, terminating the authorization.

(d)     Since at least December 1, 2018, employees in the Unit have

signed supplemental dues check-off authorizations that provide, in pertinent part:

I hereby authorize the Construction industry and Laborers Vacation
Trust Fund to deduct the amount specified in the Master Agreement (or
the same or similar agreement to which the Union is a party) from my
undisbursed Vacation Benefit, for all hours paid for or worked by me
on and after January 1, 1994 and remit said amount directly to the
Laborers' International Union of North America, Local No. 872, as a
supplemental dues. This authorization may be revoked by me, in
writing to the Vacation Trust Fund, not more than twenty (20) days and
not less than ten (10) days prior to the expiration of said Laborers'
Master Agreement (or such other applicable agreement) or one year
from the date hereof, whichever is sooner. If not revoked, this
authorization shall be deemed as renewed from year to year thereafter.

(e)     Since at least December 1, 2018, pursuant to Article XXIII of

the Construction Agreement described above in paragraph 5(c) and the dues check-off

authorizations described above in paragraph 5(d), Respondent has received, accepted, and

5

Exhibit D

retained supplemental dues deducted from the Vacation Benefit of employees in the Unit and remitted to Respondent.

(f)     The terms of Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorizations described above in paragraph 5(d) interfere with the right of employees to revoke their dues check-off authorizations at least once per year and upon expiration of the applicable collective-bargaining agreement under Section 302(c)(4) of the Labor Management Relations Act.

(g)     The terms of Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorizations described above in paragraph 5(d) discourage employees from refraining from joining or assisting Respondent.

(h)     At all material times, Colvin has been employed by employer-members of NCA/AGC, including Penhall, and has been an employee in the Unit covered by the Construction Agreement described above in paragraph 5(a).

(i)     At all material times, Vela has been employed by employer-members of NCA/AGC and has been an employee in the Unit covered by the Construction Agreement described above in paragraph 5(a).

(j)     About September 24, 1996, Vela signed a supplemental dues check-off authorization containing the terms described above in paragraph 5(d).

(k)     Since about September 24, 1996, pursuant to Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorization described above in paragraph 5(d), Respondent has received, accepted, and retained supplemental dues deducted from the Vacation Benefit of Vela and remitted to the Union.

Exhibit D

(l)     About June 1, 2016, Colvin signed a supplemental dues check-off authorization containing the terms described above in paragraph 5(d).

(m)     Since about June 1, 2016, pursuant to Article XXIII of the Construction Agreement described above in paragraph 5(c) and the dues check-off authorization described above in paragraph 5(d), Respondent has received, accepted, and retained supplemental dues deducted from the Vacation Benefit of Colvin and remitted to the Union.

(n)     On or about March 6, 2018, Colvin asked Respondent for information about how to revoke his supplemental dues check-off authorization.

(o)     Since on or about March 6, 2018, Respondent has failed and refused to provide information to Colvin about how to revoke his supplemental dues check-off authorization, including by failing and refusing to provide him with the actual, specific dates on which he was permitted to revoke his supplemental dues check-off authorization.

(p)     On or about March 6, 2018, Colvin requested in writing to revoke his supplemental dues check-off authorization.

(q)     Since on or about March 6, 2018, Respondent has failed and refused to honor Colvin's revocation of his supplemental dues check-off authorization by continuing to receive, accept, and retain supplemental dues deducted from the Vacation Benefit of Colvin and remitted to the Union.

(r)     On or about March 28, 2019, Vela requested in writing to revoke his supplemental dues check-off authorization.

(s)     Since on or about March 28, 2019, Respondent has failed and refused to provide information to Vela about how to revoke his supplemental dues check-off

Exhibit D

authorization, including by failing and refusing to provide him with the actual, specific dates on which he was permitted to revoke his supplemental dues check-off authorization.

(t)　　Since on or about March 28, 2019, Respondent has failed and refused to honor Vela's revocation of his supplemental dues check-off authorization by continuing to receive, accept, and retain supplemental dues deducted from the Vacation Benefit of Vela and remitted to the Union.

(u)　　By engaging in the conduct described above in paragraph 5(a) through 5(t), in connection with its representative status described above in paragraph 5(a), Respondent has failed and refused to represent employees in the Unit, including Colvin and Vela, for reasons that are arbitrary, discriminatory, or in bad faith and has breached the fiduciary duty it owes to employees in the Unit, including Colvin and Vela.

6.　　(a)　　At all material times, Respondent and various employers engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act, including the employer-members of NCA/AGC (collectively, the Hiring Hall User Employers), have been parties to collective-bargaining agreements requiring that Respondent be the exclusive source of referral for employment with those employers through Respondent's employment referral system, and the Hiring Hall User Employers have recognized the Union as the exclusive collective-bargaining representative of the employees covered by those collective-bargaining agreements.

(b)　　Around the following dates, Respondent implemented a "no-strike / strike rule" that is not found in the Construction Agreement described above in paragraph 5(c):

(1)　　March 12, 2019; and

(2)　　March 14, 2019.

8

(c)     The rule described above in paragraph 6(b) does not serve any representational function.

(d)     At all material times, Respondent failed to effectively inform its members and non-member hiring hall users of the "no-strike / strike rule" described above in paragraph 6(b).

(e)     Around the end of March 2019, a more precise date not currently known to the General Counsel, Colvin asked Respondent to provide a copy of hiring hall records maintained by Respondent showing the identities of hiring hall users referred for work since about March 14, 2019, to determine whether he has been treated fairly regarding job referrals.

(f)     Since about the end of March 2019, a more precise date not currently known to the General Counsel, Respondent has failed or refused to provide Colvin with the information he requested as described above in paragraph 6(c).

(g)     By engaging in the conduct described above in paragraph 6(a) through 6(f), in connection with its representative status described above in paragraph 6(a), Respondent has failed and refused to represent employees of the Hiring Hall User Employers, including Colvin, for reasons that are arbitrary, discriminatory, or in bad faith and has breached the fiduciary duty it owes to those employees, including Colvin.

7.     By the conduct described above in paragraphs 5 and 6, Respondent has been restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(b)(1)(A) of the Act.

8.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

Exhibit D

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the consolidated complaint. The answer must be **received by this office on or before October 23, 2020 or postmarked on or before October 22, 2020**. Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means

Exhibit D

allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the consolidated complaint are true.

## **NOTICE OF HEARING**

**PLEASE TAKE NOTICE THAT** at 9:00 a.m. on **October 27, 2020**, and on consecutive days thereafter until concluded, at a location and by a means and method to be determined, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this amended consolidated complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated at Phoenix, Arizona, this 9th day of October 2020.

 */s/ Cornele A. Overstreet*
Cornele A. Overstreet, Regional Director

Attachments

11

Parnell Colvin
6681 Tiara Avenue
Las Vegas, NV 89146-5104
(503) 490-6564
E-Mail: pc681@yahoo.com

Charging Party

## UNITED STATES OF AMERICA

### NATIONAL LABOR RELATIONS BOARD

### REGION 28

| | |
|---|---|
| PARNELL COLVIN, an individual, | No. 28-CB-221154 |
| | 28-CB-239339 |
| Charging Party, | 28-CB-239705 |
| | |
| RICHARD VELA, an individual, | No. 28-CB-241831 |
| | |
| Charging Party, | |
| | |
| LABORERS' INTERNATIONAL UNION OF | |
| NORTH AMERICA LOCAL 872, AFL-CIO | |
| (PENHALL), | |
| | |
| Respondent. | **MOTION TO PROCEED AS SCHEDULED** |

The Charging Party requests that the Administrative Law Judge require that the hearing

continue as scheduled on the **NOTICE OF HEARING** on **October 27, 2020, at 9:00 a.m.** for

the following reasons:

(1) The childish tactics and intentional disrespect of the NLRB's processes by Respondent's

Counsel should not be tolerated in this extremely urgent case and are reasons in

themselves why this case should proceed as scheduled.

1

Exhibit E

(2) The case is pending a Court Hearing. The Respondent's Counsel has refused to acknowledge the 50 plus-year precedent of *Bethlehem Steel,* 136 NLRB 1500 (1962).

(3) The case is extremely urgent. I have been stripped of my status as a member in "good-standing" since being suspended for subsequently opting out of voluntarily paying supplemental dues and the outcome of this case will be the determining factor of regaining my right to participate in the democracy of the Union Local 872. In April 2021, nominations for the May 2021 Election of Elected Officers will be conducted. My status as a member in "good-standing" is required in order to participate as a Candidate.

(4) Only part of the consolidated cases have been pending since 2018; and since Respondent's Counsel can not count to nine without missing a number, he would not know that this means it has been well over 24 months this case has been pending without a hearing and still with no resolution.

(5) The issues regarding dues check off should be resolved by the current Board as soon as possible. Since these issues have been resolved by Boards under many Administrations, waiting for a new Board to be appointed by the newly elected presidential candidate is seemingly pointless.

(6) The Union's Counsel should take a remedial reading course in order to learn the definition of "voluntary" since that would eliminate the National Labor Relations Board from having to hear cases such as these. Then, counsel can school the Respondents and they can remedy their imbecilic understanding of "voluntary".

(7) Counsel's hypocritical reasoning that the Board has not found a Union video carrier is outright ridiculous. The Union does not retain union companies for many services such as cleaning, maintenance, building improvements and even legal representation.

Exhibit E

(8) Counsel should recuse himself from representing Respondent's in this case since the charging parties are union members and derivative clients of representing counsel. As Professors Geoffrey C. Hazard, Jr. and W. William Hodes have explained that where "the lawyer is hired to represent the fiduciary, and the fiduciary is legally required to serve the beneficiary, the lawyer should be deemed employed to further that service."

(9) As a charging party, I am in favor of having an in-person hearing, if it does not postpone the date of the scheduled hearing.

For the stated reasons above, the hearing should proceed at the scheduled date and time as noted on the Notice of Hearing.

Dated: October 12, 2020

By: _____
PARNELL COLVIN

Charging Party

**Exhibit E**

# PROOF OF SERVICE

I hereby certify that on <u>October 13, 2020,</u> I served the following documents in the

manner described below:

## MOTION TO PROCEED AS SCHEDULED

✗ (BY ELECTRONIC SERVICE:  By electronically mailing a true and correct copy
through my personal electronic mail from <u>pc681@yahoo.com</u> to the email addresses set
forth below.

On the following part(ies) in the action:

David A. Rosenfeld Attorney
Weinberg, Roger & Rosenfeld, PC
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501-6430
<u>drosenfeld@unioncounsel.net</u>

Richard Vela
867 North Lamb Boulevard, SP82
Las Vegas, NV 89110
<u>richardpittvela@gmail.com</u>

I declare under penalty of perjury the laws of the United States of America that the

foregoing is true and correct.  Executed on October 13, 2020, at Las Vegas, Nevada.

_____
Parnell Colvin

4

Exhibit E

**LABORERS INTERNATIONAL UNION OF NORTH
AMERICA LOCAL 872, AFL-CIO
(Various Employers, Including the Employer-Members
of Nevada Contractors Association / Associated
General Contractors Association)**

|  |  |  |
|---|---|---|
| **and** | **Cases** | **28-CB-221154** |
|  |  | **28-CB-239339** |
| **PARNELL COLVIN, an Individual** |  | **28-CB-239705** |
| **and** | **Case** | **28-CB-241831** |
| **RICHARD VELA, an Individual** |  |  |

### ORDER POSTPONING HEARING INDEFINITELY

On May 7, 2020, an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing issued in the above matters, scheduling a hearing to commence at a date and time to be determined. On September 15, 2020, a First Amended Complaint and Notice of Hearing issued, scheduling a hearing to commence on October 27, 2020, at a location and by a means and method to be determined.

On June 29, 2020, an unfair labor practice charge in 28-CB-262489 was filed, which involves the same Respondent and related issues. Accordingly, pending the investigation and determination of the merits of the related charge in 28-CB-262489,

**IT IS ORDERED** that the hearing in these matters, currently scheduled to commence on October 27, 2020, be, and the same is, postponed indefinitely.

Dated at Phoenix, Arizona, this 15th day of October 2020.

*/s/ Cornele A. Overstreet*
Cornele A. Overstreet, Regional Director

Exhibit F

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
## REGION 28

**LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 872, AFL-CIO (VARIOUS EMPLOYERS, INCLUDING THE EMPLOYER-MEMBERS OF NEVADA CONTRACTORS ASSOCIATION/ ASSOCIATED GENERAL CONTRACTORS ASSOCIATION)**

|  |  |
|---|---|
| **and** | **Cases  28-CB-221154** |
|  | **28-CB-239339** |
| **PARNELL COLVIN, an Individual** | **28-CB-239705** |
|  |  |
| **and** | **Case    28-CB-241831** |

**RICHARD VELA, an Individual**

## ORDER SEVERING CASES AND WITHDRAWING
## COMPLAINT ALLEGATIONS

On October 9, 2020, a Second Amended Consolidated Complaint and Notice of Hearing (the Complaint) issued in the above-captioned cases.  Following the issuance of the Complaint, in Memorandum GC 21-02, "Rescission of Certain General Counsel Memoranda" (Feb. 1, 2021), the Acting General Counsel rescinded Memorandum GC 19-04, "Unions' Duty to Properly Notify Employees of Their *General Motors*/*Beck* Rights and to Accept Dues Checkoff Revocations after Contract Expiration" (Feb. 22, 2019) (GC 19-04).  GC 19-04 directed Regions to urge the National Labor Relations Board to: (1) overturn *Frito-Lay*, 243 NLRB 137 (1979), which permits unions to restrict revocation of dues check-off authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement; and (2) mandate certain union communications with employees concerning untimely revocation requests.

Exhibit G

Certain allegations of the Complaint were based on those directives. Accordingly,

       **IT IS ORDERED** that Cases 28-CB-221154, 28-CB-239705, and 28-CB-241831 are severed from the Complaint.

       **IT IS FURTHER ORDERED** that paragraphs 1(a), 1(d), 1(e), 1(f), and 5 of the Complaint and the portion of paragraph 7 of the Complaint alleging that, by the conduct described in paragraph 5 of the Complaint, Respondent has been restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(b)(1)(A) of the Act, are withdrawn.

       Dated at Phoenix, Arizona, this 26th day of August, 2021.


                */s/ Cornele A. Overstreet*
                Cornele A. Overstreet, Regional Director

Exhibit G



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
REGION 28
2600 North Central Avenue          Agency Website: www.nlrb.gov
Suite 1400                         Telephone: (602)640-2160
Phoenix, AZ 85004-3099             Fax: (602)640-2178

August 26, 2021

Mr. Parnell Colvin
6681 Tara Avenue
Las Vegas, NV 89146-5104

<div style="margin-left:40%">

Re:    Laborers International Union of North
America, Local 872, AFL-CIO
(Penhall Company)
Case 28-CB-221154

</div>

Dear Mr. Colvin:

We have carefully investigated and considered your charge that Laborers' International Union of North America Local 872, AFL-CIO (the Union) has violated the National Labor Relations Act (the Act).

**Decision to Dismiss:** Your charge alleges that the Union engaged in unfair labor practices within the meaning of Section 8(b)(1)(A) of the Act by failing to process your request to revoke your authorization for your supplemental union dues to be deducted from your vacation fund payments. You have also alleged that the Union failed to provide you with the specific dates of the window periods during which you could revoke that authorization.

I found merit to the charge and issued a complaint based on a directive, in Memorandum GC 19-04, "Unions' Duty to Properly Notify Employees of Their *General Motors/Beck* Rights and to Accept Dues Checkoff Revocations after Contract Expiration" (Feb. 22, 2019) (GC 19-04), for Regions to urge the National Labor Relations Board to: (1) overturn *Frito-Lay*, 243 NLRB 137 (1979), which permits unions to restrict revocation of dues check-off authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement; and (2) mandate certain union communications with employees concerning untimely revocation requests.

Following issuance of the complaint, in Memorandum GC 21-02, "Rescission of Certain General Counsel Memoranda" (Feb. 1, 2021), the Acting General Counsel rescinded Memorandum GC 19-04. Based on extant law, the Union's not processing your request to revoke your supplemental dues checkoff authorization because your request was not made during the applicable window periods and its not giving you the specific dates of the window periods during which you could revoke were lawful. I have therefore issued an order severing this case from the complaint and withdrawing the related complaint allegations, and I have decided to dismiss your charge.

Accordingly, your charge is dismissed, and I am declining to re-issue a complaint in this matter.

**Charging Party's Right to Appeal:** The Charging Party may appeal my decision to the General Counsel of the National Labor Relations Board, through the Office of Appeals.

**Means of Filing: You must file your appeal electronically or provide a written statement explaining why electronic submission is not possible or feasible (Written instructions for the NLRB's E-Filing system and the Terms and Conditions of the NLRB's E-Filing policy are available at www.nlrb.gov. See User Guide. A video demonstration which provides step-by-step instructions and frequently asked questions are also available at www.nlrb.gov. If you require additional assistance with E-Filing, please contact e-Filing@nlrb.gov.**

You are encouraged to also submit a complete statement of the facts and reasons why you believe my decision was incorrect. If you cannot file electronically, please send the appeal and your written explanation of why you cannot file electronically to the **General Counsel** at the **National Labor Relations Board, Attn: Office of Appeals, 1015 Half Street SE, Washington, DC 20570-0001**. Unless filed electronically, a copy of the appeal should also be sent to me.

The appeal MAY NOT be filed by fax or email. The Office of Appeals will not process faxed or emailed appeals.

**Appeal Due Date:** The appeal is due on **September 9, 2021**. If the appeal is filed electronically, the transmission of the entire document through the Agency's website must be completed **no later than 11:59 p.m. Eastern Time** on the due date. If filing by mail or by delivery service an appeal will be found to be timely filed if it is postmarked or given to a delivery service no later than September 8, 2021. **If an appeal is postmarked or given to a delivery service on the due date, it will be rejected as untimely.** If hand delivered, an appeal must be received by the General Counsel in Washington D.C. by 5:00 p.m. Eastern Time on the appeal due date. If an appeal is not submitted in accordance with this paragraph, it will be rejected.

**Extension of Time to File Appeal:** The General Counsel may allow additional time to file the appeal if the Charging Party provides a good reason for doing so and the request for an extension of time is **received on or before September 9, 2021.** The request may be filed electronically through the *E-File Documents* link on our website www.nlrb.gov, by fax to (202)273-4283, by mail, or by delivery service. The General Counsel will not consider any request for an extension of time to file an appeal received after September 9, 2021, **even if it is postmarked or given to the delivery service before the due date**. Unless filed electronically, a copy of the extension of time should also be sent to me.

**Confidentiality:** We will not honor requests to limit our use of appeal statements or evidence. Upon a request under the Freedom of Information Act (FOIA) by a party during the processing of an appeal, the Agency's FOIA Branch discloses appeal statements, redacted for

personal privacy, confidential source protection, or other applicable FOIA exemptions.  In the event the appeal is sustained, any statement or material submitted may be introduced as evidence at a hearing before an administrative law judge.  However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Very truly yours,

*/s/ Cornele A. Overstreet*

Cornele A. Overstreet
Regional Director

Enclosure

cc:     Laborers' International Union of North
America Local 872, AFL-CIO
2345 Red Rock Street, Suite 330
Las Vegas, NV 89146

David A. Rosenfeld, Attorney at Law
Weinberg, Roger & Rosenfeld, PC
1375 55th Street
Emeryville, CA 94608-2609

Penhall Company
477 West University Avenue
Las Vegas, NV 89103

CAO/KAS/mhz

Exhibit H

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

**APPEAL FORM**

To:  General Counsel                                      Date:
     Attn: Office of Appeals
     National Labor Relations Board
     1015 Half Street SE
     Washington, DC 20570-0001

        Please be advised that an appeal is hereby taken to the General Counsel of the
National Labor Relations Board from the action of the Regional Director in refusing to
issue a complaint on the charge in

Laborers International Union of North America, Local 872, AFL-CIO (Penhall
Company)
Case Name(s).

28-CB-221154
Case No(s). *(If more than one case number, include all case numbers in which appeal is
taken.)*

                                        _____
                                              *(Signature)*

# E-FILING TO APPEALS

1. **Extension of Time**:  This document is used when the Charging Party is asking for more time to efile an Appeal.

   - If an Extension of Time is e-filed, and there are additional documents to be e-filed simultaneously with it, please e-file those documents under the selection **Correspondence**.
   - After an Extension of Time has already been e-filed, any **additional** materials to add to the Extension of Time should be e-filed under **Correspondence**.

2. **File an Appeal**:  If the Charging Party does not agree with the Region's decision on the case, an Appeal can be e-filed.

   - Only **one** (**1**) **Appeal** can be e-filed to each determination in the Region's decision letter that is received.
   - After an Appeal has been e-filed, any **additional** materials to add to the Appeal should be e-filed under **Correspondence**.

3. **Notice of Appearance**:  Either party can e-file a Notice of Appearance if there is a new counsel representing one side or a different counsel.

   - This document is only e-filed with the Office of Appeals after a decision has been made by the Region.
   - This document can be e-filed **before** an Appeal is e-filed.

4. **Correspondence**:  Parties will **select** Correspondence when adding documents or supplementing the Appeal or Extension of Time.

   - Correspondence is used to e-file documents **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

5. **Position Statement**:  The Charging Party or Charged Party may e-file a Position Statement.

   - The Charging Party will e-file this document as a supplement of the Appeal.
   - The Charged Party will specifically file one to support the Region's decision.
   - This document should be e-filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

6. **Withdrawal Request**:  If the Charging Party decides to no longer pursue their appeal, he/she can e-file a Withdrawal Request to the Office of Appeals.

   - This document should be e-Filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.



7. The selections of **Evidence** or **Other** should no longer be used.



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
REGION 28

2600 North Central Avenue                    Agency Website: www.nlrb.gov
Suite 1400                                   Telephone: (602)640-2160
Phoenix, AZ 85004-3099                       Fax: (602)640-2178

August 26, 2021

Mr. Parnell Colvin
6681 Tara Avenue
Las Vegas, NV 89146-5104

> Re:  Laborers International Union of North
>      America, Local 872, AFL-CIO
>      (Penhall Company)
>      Case 28-CB-221154

Dear Mr. Colvin:

We have carefully investigated and considered your charge that Laborers' International Union of North America Local 872, AFL-CIO (the Union) has violated the National Labor Relations Act (the Act).

**Decision to Dismiss:** Your charge alleges that the Union engaged in unfair labor practices within the meaning of Section 8(b)(1)(A) of the Act by failing to process your request to revoke your authorization for your supplemental union dues to be deducted from your vacation fund payments.  You have also alleged that the Union failed to provide you with the specific dates of the window periods during which you could revoke that authorization.

I found merit to the charge and issued a complaint based on a directive, in Memorandum GC 19-04, "Unions' Duty to Properly Notify Employees of Their *General Motors/Beck* Rights and to Accept Dues Checkoff Revocations after Contract Expiration" (Feb. 22, 2019) (GC 19-04), for Regions to urge the National Labor Relations Board to: (1) overturn *Frito-Lay*, 243 NLRB 137 (1979), which permits unions to restrict revocation of dues check-off authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement; and (2) mandate certain union communications with employees concerning untimely revocation requests.

Following issuance of the complaint, in Memorandum GC 21-02, "Rescission of Certain General Counsel Memoranda" (Feb. 1, 2021), the Acting General Counsel rescinded Memorandum GC 19-04.  Based on extant law, the Union's not processing your request to revoke your supplemental dues checkoff authorization because your request was not made during the applicable window periods and its not giving you the specific dates of the window periods during which you could revoke were lawful. I have therefore issued an order severing this case from the complaint and withdrawing the related complaint allegations, and I have decided to dismiss your charge.

Exhibit I

Accordingly, your charge is dismissed, and I am declining to re-issue a complaint in this matter.

**Charging Party's Right to Appeal:** The Charging Party may appeal my decision to the General Counsel of the National Labor Relations Board, through the Office of Appeals.

**Means of Filing: You must file your appeal electronically or provide a written statement explaining why electronic submission is not possible or feasible (Written instructions for the NLRB's E-Filing system and the Terms and Conditions of the NLRB's E-Filing policy are available at www.nlrb.gov. See User Guide. A video demonstration which provides step-by-step instructions and frequently asked questions are also available at www.nlrb.gov. If you require additional assistance with E-Filing, please contact e-Filing@nlrb.gov.**

You are encouraged to also submit a complete statement of the facts and reasons why you believe my decision was incorrect. If you cannot file electronically, please send the appeal and your written explanation of why you cannot file electronically to the **General Counsel** at the **National Labor Relations Board, Attn: Office of Appeals, 1015 Half Street SE, Washington, DC 20570-0001**. Unless filed electronically, a copy of the appeal should also be sent to me.

The appeal MAY NOT be filed by fax or email. The Office of Appeals will not process faxed or emailed appeals.

**Appeal Due Date:** The appeal is due on **September 9, 2021**. If the appeal is filed electronically, the transmission of the entire document through the Agency's website must be completed **no later than 11:59 p.m. Eastern Time** on the due date. If filing by mail or by delivery service an appeal will be found to be timely filed if it is postmarked or given to a delivery service no later than September 8, 2021. **If an appeal is postmarked or given to a delivery service on the due date, it will be rejected as untimely.** If hand delivered, an appeal must be received by the General Counsel in Washington D.C. by 5:00 p.m. Eastern Time on the appeal due date. If an appeal is not submitted in accordance with this paragraph, it will be rejected.

**Extension of Time to File Appeal:** The General Counsel may allow additional time to file the appeal if the Charging Party provides a good reason for doing so and the request for an extension of time is **received on or before September 9, 2021.** The request may be filed electronically through the *E-File Documents* link on our website www.nlrb.gov, by fax to (202)273-4283, by mail, or by delivery service. The General Counsel will not consider any request for an extension of time to file an appeal received after September 9, 2021, **even if it is postmarked or given to the delivery service before the due date**. Unless filed electronically, a copy of the extension of time should also be sent to me.

**Confidentiality:** We will not honor requests to limit our use of appeal statements or evidence. Upon a request under the Freedom of Information Act (FOIA) by a party during the processing of an appeal, the Agency's FOIA Branch discloses appeal statements, redacted for

Exhibit I

personal privacy, confidential source protection, or other applicable FOIA exemptions.  In the event the appeal is sustained, any statement or material submitted may be introduced as evidence at a hearing before an administrative law judge.  However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Very truly yours,

*/s/ Cornele A. Overstreet*

Cornele A. Overstreet
Regional Director

Enclosure

cc:     Laborers' International Union of North
America Local 872, AFL-CIO
2345 Red Rock Street, Suite 330
Las Vegas, NV 89146

David A. Rosenfeld, Attorney at Law
Weinberg, Roger & Rosenfeld, PC
1375 55th Street
Emeryville, CA 94608-2609

Penhall Company
477 West University Avenue
Las Vegas, NV 89103

CAO/KAS/mhz

Exhibit I

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

**APPEAL FORM**

To: General Counsel                                                        Date:
Attn: Office of Appeals
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570-0001

      Please be advised that an appeal is hereby taken to the General Counsel of the National Labor Relations Board from the action of the Regional Director in refusing to issue a complaint on the charge in

Laborers International Union of North America, Local 872, AFL-CIO (Penhall Company)
_____
Case Name(s).


28-CB-221154
_____
Case No(s). *(If more than one case number, include all case numbers in which appeal is taken.)*


_____
                              *(Signature)*

Exhibit I

# E-FILING TO APPEALS

1. **Extension of Time**:  This document is used when the Charging Party is asking for more time to efile an Appeal.

   - If an Extension of Time is e-filed, and there are additional documents to be e-filed simultaneously with it, please e-file those documents under the selection **Correspondence**.
   - After an Extension of Time has already been e-filed, any **additional** materials to add to the Extension of Time should be e-filed under **Correspondence**.

2. **File an Appeal**:  If the Charging Party does not agree with the Region's decision on the case, an Appeal can be e-filed.

   - Only **one** (**1**) **Appeal** can be e-filed to each determination in the Region's decision letter that is received.
   - After an Appeal has been e-filed, any **additional** materials to add to the Appeal should be e-filed under **Correspondence**.

3. **Notice of Appearance**:  Either party can e-file a Notice of Appearance if there is a new counsel representing one side or a different counsel.

   - This document is only e-filed with the Office of Appeals after a decision has been made by the Region.
   - This document can be e-filed **before** an Appeal is e-filed.

4. **Correspondence**:  Parties will **select** Correspondence when adding documents or supplementing the Appeal or Extension of Time.

   - Correspondence is used to e-file documents **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

5. **Position Statement**:  The Charging Party or Charged Party may e-file a Position Statement.

   - The Charging Party will e-file this document as a supplement of the Appeal.
   - The Charged Party will specifically file one to support the Region's decision.
   - This document should be e-filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

6. **Withdrawal Request**:  If the Charging Party decides to no longer pursue their appeal, he/she can e-file a Withdrawal Request to the Office of Appeals.

   - This document should be e-Filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.



7. The selections of **Evidence** or **Other** should no longer be used.

Exhibit I



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
REGION 28
2600 North Central Avenue
Suite 1400
Phoenix, AZ 85004-3099

Agency Website: www.nlrb.gov
Telephone: (602)640-2160
Fax: (602)640-2178

August 26, 2021

Mr. Parnell Colvin
6681 Tara Avenue
Las Vegas, NV 89146-5104

Re:     Laborers International Union of North
        America, Local 872, AFL-CIO
        (Various Employers)
        Case 28-CB-239705

Dear Mr. Colvin:

We have carefully investigated and considered your charge that Laborers' International Union of North America, Local 872, AFL-CIO (the Union) has violated the National Labor Relations Act (the Act).

**Decision to Dismiss:** Your charge alleges that the Union engaged in unfair labor practices within the meaning of Section 8(b)(1)(A) of the Act by receiving, accepting, and retaining supplemental dues deducted pursuant to dues checkoff authorizations that interfere with the right of employees to revoke their dues checkoff authorizations at least once per year and upon expiration of the applicable collective-bargaining agreement under Section 302(c)(4) of the Labor Management Relations Act.

I found merit to the charge and issued a complaint based on a directive, in Memorandum GC 19-04, "Unions' Duty to Properly Notify Employees of Their *General Motors/Beck* Rights and to Accept Dues Checkoff Revocations after Contract Expiration" (Feb. 22, 2019) (GC 19-04), for Regions to urge the National Labor Relations Board to overturn *Frito-Lay*, 243 NLRB 137 (1979), which permits unions to restrict revocation of dues check-off authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement.

Following issuance of the complaint, in Memorandum GC 21-02, "Rescission of Certain General Counsel Memoranda" (Feb. 1, 2021), the Acting General Counsel rescinded Memorandum GC 19-04.  Based on extant law, the Union's restricting revocation of members' supplemental dues checkoff authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement was lawful. I have therefore issued an order severing this case from the complaint and withdrawing the related complaint allegations, and I have decided to dismiss your charge.

Exhibit J

Accordingly, your charge is dismissed, and I am declining to re-issue a complaint in this matter.

**Charging Party's Right to Appeal:**  The Charging Party may appeal my decision to the General Counsel of the National Labor Relations Board, through the Office of Appeals.

**Means of Filing:  You must file your appeal electronically or provide a written statement explaining why electronic submission is not possible or feasible (Written instructions for the NLRB's E-Filing system and the Terms and Conditions of the NLRB's E-Filing policy are available at www.nlrb.gov.  See User Guide.  A video demonstration which provides step-by-step instructions and frequently asked questions are also available at www.nlrb.gov.  If you require additional assistance with E-Filing, please contact e-Filing@nlrb.gov.**

You are encouraged to also submit a complete statement of the facts and reasons why you believe my decision was incorrect.  If you cannot file electronically, please send the appeal and your written explanation of why you cannot file electronically to the **General Counsel** at the **National Labor Relations Board, Attn: Office of Appeals, 1015 Half Street SE, Washington, DC 20570-0001**.  Unless filed electronically, a copy of the appeal should also be sent to me.

The appeal MAY NOT be filed by fax or email.  The Office of Appeals will not process faxed or emailed appeals.

**Appeal Due Date:** The appeal is due on **September 9, 2021**.  If the appeal is filed electronically, the transmission of the entire document through the Agency's website must be completed **no later than 11:59 p.m. Eastern Time** on the due date.  If filing by mail or by delivery service an appeal will be found to be timely filed if it is postmarked or given to a delivery service no later than September 8, 2021.  **If an appeal is postmarked or given to a delivery service on the due date, it will be rejected as untimely**.  If hand delivered, an appeal must be received by the General Counsel in Washington D.C. by 5:00 p.m. Eastern Time on the appeal due date.  If an appeal is not submitted in accordance with this paragraph, it will be rejected.

**Extension of Time to File Appeal:** The General Counsel may allow additional time to file the appeal if the Charging Party provides a good reason for doing so and the request for an extension of time is **received on or before September 9, 2021.**  The request may be filed electronically through the ***E-File Documents*** link on our website www.nlrb.gov, by fax to (202)273-4283, by mail, or by delivery service.  The General Counsel will not consider any request for an extension of time to file an appeal received after September 9, 2021, **even if it is postmarked or given to the delivery service before the due date**.  Unless filed electronically, a copy of the extension of time should also be sent to me.

**Confidentiality:** We will not honor requests to limit our use of appeal statements or evidence.  Upon a request under the Freedom of Information Act (FOIA) by a party during the processing of an appeal, the Agency's FOIA Branch discloses appeal statements, redacted for

Exhibit J

personal privacy, confidential source protection, or other applicable FOIA exemptions.  In the event the appeal is sustained, any statement or material submitted may be introduced as evidence at a hearing before an administrative law judge. However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Very truly yours,

*/s/ Cornele A. Overstreet*

Cornele A. Overstreet
Regional Director

Enclosure

cc:     David A. Rosenfeld, Attorney
        Weinberg, Roger & Rosenfeld, PC
        1375 55th Street
        Emeryville, CA 94608-2609

        Laborers' International Union of North
        America, Local 872, AFL-CIO
        2345 Red Rock Street, Suite 330
        Las Vegas, NV 89146-3157

Exhibit J

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

**APPEAL FORM**

To:  General Counsel                                          Date:
     Attn: Office of Appeals
     National Labor Relations Board
     1015 Half Street SE
     Washington, DC 20570-0001

        Please be advised that an appeal is hereby taken to the General Counsel of the National
Labor Relations Board from the action of the Regional Director in refusing to issue a complaint
on the charge in

Laborers International Union of North America, Local 872, AFL-CIO (Various Employers)
Case Name(s).

28-CB-239705
Case No(s). *(If more than one case number, include all case numbers in which appeal is taken.)*

_____

                                                    *(Signature)*

# E-FILING TO APPEALS

1. **Extension of Time**:  This document is used when the Charging Party is asking for more time to efile an Appeal.

    - If an Extension of Time is e-filed, and there are additional documents to be e-filed simultaneously with it, please e-file those documents under the selection **Correspondence**.
    - After an Extension of Time has already been e-filed, any **additional** materials to add to the Extension of Time should be e-filed under **Correspondence**.

2. **File an Appeal**:  If the Charging Party does not agree with the Region's decision on the case, an Appeal can be e-filed.

    - Only **one** (**1**) **Appeal** can be e-filed to each determination in the Region's decision letter that is received.
    - After an Appeal has been e-filed, any **additional** materials to add to the Appeal should be e-filed under **Correspondence**.

3. **Notice of Appearance**:  Either party can e-file a Notice of Appearance if there is a new counsel representing one side or a different counsel.

    - This document is only e-filed with the Office of Appeals after a decision has been made by the Region.
    - This document can be e-filed **before** an Appeal is e-filed.

4. **Correspondence**:  Parties will **select** Correspondence when adding documents or supplementing the Appeal or Extension of Time.

    - Correspondence is used to e-file documents **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

5. **Position Statement**:  The Charging Party or Charged Party may e-file a Position Statement.

    - The Charging Party will e-file this document as a supplement of the Appeal.
    - The Charged Party will specifically file one to support the Region's decision.
    - This document should be e-filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

6. **Withdrawal Request**:  If the Charging Party decides to no longer pursue their appeal, he/she can e-file a Withdrawal Request to the Office of Appeals.

Exhibit J

- This document should be e-Filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.



7. The selections of **Evidence** or **Other** should no longer be used.



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
REGION 28
2600 North Central Avenue
Suite 1400
Phoenix, AZ 85004-3099

Agency Website: www.nlrb.gov
Telephone: (602)640-2160
Fax: (602)640-2178

August 26, 2021

Mr. Richard Pitt Vela
867 North Lamb Boulevard, #82
Las Vegas, NV 89110

Re:     Laborers' International Union of North
        America, Local 872, AFL-CIO
        (Various Employers)
        Case 28-CB-241831

Dear Mr. Vela:

We have carefully investigated and considered your charge that Laborers' International Union of North America, Local 872, AFL-CIO (the Union) has violated the National Labor Relations Act (the Act).

**Decision to Dismiss:** Your charge alleges that the Union has engaged in unfair labor practices within the meaning of Section 8(b)(1)(A) of the Act by: (1) receiving, accepting, and retaining supplemental dues deducted pursuant to dues checkoff authorizations that interfere with the right of employees to revoke their dues check-off authorizations at least once per year and upon expiration of the applicable collective-bargaining agreement under Section 302(c)(4) of the Labor Management Relations Act; and (2) refusing to process your request to revoke your supplemental dues checkoff authorization.

I found merit to the charge and issued a complaint based on a directive, in Memorandum GC 19-04, "Unions' Duty to Properly Notify Employees of Their *General Motors/Beck* Rights and to Accept Dues Checkoff Revocations after Contract Expiration" (Feb. 22, 2019) (GC 19-04), for Regions to urge the National Labor Relations Board to overturn *Frito-Lay*, 243 NLRB 137 (1979), which permits unions to restrict revocation of dues check-off authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement.

Following issuance of the complaint, in Memorandum GC 21-02, "Rescission of Certain General Counsel Memoranda" (Feb. 1, 2021), the Acting General Counsel rescinded Memorandum GC 19-04. Based on extant law, the Union's restricting revocation of members' supplemental dues checkoff authorizations to window periods associated with the anniversary of an employee's signing an authorization and the expiration of the applicable collective-bargaining agreement and its refusing to process the request to revoke your supplemental dues checkoff

Exhibit K

authorization that you made outside the applicable window periods were lawful.  I have therefore issued an order severing this case from the complaint and withdrawing the related complaint allegations, and I have decided to dismiss your charge.

Accordingly, your charge is dismissed, and I am declining to re-issue a complaint in this matter.

**Charging Party's Right to Appeal:**  The Charging Party may appeal my decision to the General Counsel of the National Labor Relations Board, through the Office of Appeals.

**Means of Filing:  You must file your appeal electronically or provide a written statement explaining why electronic submission is not possible or feasible (Written instructions for the NLRB's E-Filing system and the Terms and Conditions of the NLRB's E-Filing policy are available at www.nlrb.gov.  See User Guide.  A video demonstration which provides step-by-step instructions and frequently asked questions are also available at www.nlrb.gov.  If you require additional assistance with E-Filing, please contact e-Filing@nlrb.gov.**

You are encouraged to also submit a complete statement of the facts and reasons why you believe my decision was incorrect.  If you cannot file electronically, please send the appeal and your written explanation of why you cannot file electronically to the **General Counsel** at the **National Labor Relations Board, Attn: Office of Appeals, 1015 Half Street SE, Washington, DC 20570-0001**.  Unless filed electronically, a copy of the appeal should also be sent to me.

The appeal MAY NOT be filed by fax or email.  The Office of Appeals will not process faxed or emailed appeals.

**Appeal Due Date:** The appeal is due on **September 9, 2021**. If the appeal is filed electronically, the transmission of the entire document through the Agency's website must be completed **no later than 11:59 p.m. Eastern Time** on the due date.  If filing by mail or by delivery service an appeal will be found to be timely filed if it is postmarked or given to a delivery service no later than September 8, 2021.  **If an appeal is postmarked or given to a delivery service on the due date, it will be rejected as untimely**.  If hand delivered, an appeal must be received by the General Counsel in Washington D.C. by 5:00 p.m. Eastern Time on the appeal due date.  If an appeal is not submitted in accordance with this paragraph, it will be rejected.

**Extension of Time to File Appeal:** The General Counsel may allow additional time to file the appeal if the Charging Party provides a good reason for doing so and the request for an extension of time is **received on or before September 9, 2021.**  The request may be filed electronically through the *E-File Documents* link on our website www.nlrb.gov, by fax to (202)273-4283, by mail, or by delivery service.  The General Counsel will not consider any request for an extension of time to file an appeal received after September 9, 2021, **even if it is postmarked or given to the delivery service before the due date**.  Unless filed electronically, a copy of the extension of time should also be sent to me.

Exhibit K

**Confidentiality:** We will not honor requests to limit our use of appeal statements or evidence.  Upon a request under the Freedom of Information Act (FOIA) by a party during the processing of an appeal, the Agency's FOIA Branch discloses appeal statements, redacted for personal privacy, confidential source protection, or other applicable FOIA exemptions.  In the event the appeal is sustained, any statement or material submitted may be introduced as evidence at a hearing before an administrative law judge.  However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Very truly yours,

*/s/ Cornele A. Overstreet*

Cornele A. Overstreet
Regional Director

Enclosure

cc:     David A. Rosenfeld, Attorney
        Weinberg, Roger & Rosenfeld, PC
        1375 55th Street
        Emeryville, CA 94608-2609

        Laborers' International Union of North
        America, Local 872, AFL-CIO
        2345 Red Rock Street, Suite 330
        Las Vegas, NV 89146-3157

CAO/KAS/mhz

Exhibit K

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

**APPEAL FORM**

To: General Counsel                                                                Date:
Attn: Office of Appeals
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570-0001

     Please be advised that an appeal is hereby taken to the General Counsel of the National Labor Relations Board from the action of the Regional Director in refusing to issue a complaint on the charge in

Laborers' International Union of North America, Local 872, AFL-CIO (Various Employers)
Case Name(s).

28-CB-241831
Case No(s). *(If more than one case number, include all case numbers in which appeal is taken.)*

_____
*(Signature)*

Exhibit K

# E-FILING TO APPEALS

1. **Extension of Time**:  This document is used when the Charging Party is asking for more time to efile an Appeal.

   - If an Extension of Time is e-filed, and there are additional documents to be e-filed simultaneously with it, please e-file those documents under the selection **Correspondence**.
   - After an Extension of Time has already been e-filed, any **additional** materials to add to the Extension of Time should be e-filed under **Correspondence**.

2. **File an Appeal**:  If the Charging Party does not agree with the Region's decision on the case, an Appeal can be e-filed.

   - Only **one** (**1**) **Appeal** can be e-filed to **each** determination in the Region's decision letter that is received.
   - After an Appeal has been e-filed, any **additional** materials to add to the Appeal should be e-filed under **Correspondence**.

3. **Notice of Appearance**:  Either party can e-file a Notice of Appearance if there is a new counsel representing one side or a different counsel.

   - This document is only e-filed with the Office of Appeals after a decision has been made by the Region.
   - This document can be e-filed **before** an Appeal is e-filed.

4. **Correspondence**:  Parties will **select** Correspondence when adding documents or supplementing the Appeal or Extension of Time.

   - Correspondence is used to e-file documents **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

5. **Position Statement**:  The Charging Party or Charged Party may e-file a Position Statement.

   - The Charging Party will e-file this document as a supplement of the Appeal.
   - The Charged Party will specifically file one to support the Region's decision.
   - This document should be e-filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.

6. **Withdrawal Request**:  If the Charging Party decides to no longer pursue their appeal, he/she can e-file a Withdrawal Request to the Office of Appeals.

   - This document should be e-Filed **after** an **Extension of Time, Appeal** or **Notice of Appearance** has been e-filed.



7. The selections of **Evidence** or **Other** should no longer be used.

GENERAL COUNSEL                                    DATE: SEPTEMBER 6,2021
ATTN: OFFICE OF APPEALS
1015 HALF STREET SE
WASHINGTON, DC 20570-001
28-CB-239705

This appeal is to seek justice from the regional director Connele A. Overstreet, irrationally and abruptly decided to remove our case days before we were expected to have our day in court for the complaint he originally issued. This appeal can not be overlooked without stating the politics and misconduct the regional director displayed by removing our case from the docket indefinitely with no justification.

My charge / complaint has been pending over 3 years while the regional director was doing everything in his power to sabotage my charges/ complaints to appease the union and it's positions. As I finally was prepared to finally have my day in court because the regional director issued the complaint within days of my court hearing I received a phone call from the investigator stating that the regional director at the last minute removed our case indefinitely. Myself and Richard Vela, immediately filed objections to this but never heard from anyone or got clarification on why this happened.

The reality is the regional director was playing politics with our complaints the presidential elections was close and as union attorney David Rosenfeld, had suggested that the case be put on hold because if Biden wins there would be a new administration which means a new general counsel if Biden wins a more union friendly general counsel would be appointed and most certainly would find ways to side with the unions.

Cornele A. Overstreet, playing politics he removed our case from the docket indefinitely and waited for the outcome of the presidential elections and when Biden won that meant a new general counsel would be in place. Even after the elections I repeatedly called the regional director's office for updates leaving numerous messages week after week month after month and never heard from him or anyone from his office. About two weeks ago I got a call from an agent that informed me that the regional director had decided to suddenly not move forward on the complaint he originally issued.

After engaging the agent it was clear that the regional director had removed our case from being heard by the administrative law judge. To wait for the outcome of the presidential elections and

Exhibit L

with Biden, winning our case just sat in limbo while a new general counsel was put in place. Once this happened the new general counsel had a different view so he ordered the complaints be removed. This action is so unfair and has caused me damage. We should be entitled to the view at the time that the regional director originally found unfair labor practice by the union. The regional director simply changed his position because of the new general counsel. His actions are so political he should be fired and is truly unfit for this position.

Even if my request was not filed timely the union has an obligation to inform members of the process and when the requests can be made timely which it failed to do. So the regional director found that to be an unfair labor practice. Also when a new contract is bargained and signed the authorization card doesn't just automatically roll over a new contract means all members have to sign a new authorization card to have dues taken out of members paycheck this did not happen which is another violation.

I was in good standing. I am an outspoken member that speaks on behalf of members that are scared to speak for fear of retribution and being black balled. I was in good standing, I paid my dues, the union accepted them then sent them back to me. I did not know the union did this so it put me in a position to have my membership terminated when I did my duties. The regional director thinks this is acceptable. This was a tactic to kick me out of the union my slate ran against the current leadership so it has been trying for years to terminate my membership.

This cannot be allowed to stand if so this is away the union can terminate members for any reason. The regional director did no investigation; he sat on my complaint and waited for the outcome of the presidential elections. If this had not happened my case would have been heard by an administrative judge. This is my livelihood, how I support my family and it has just been taken away by one individual because he now changes his mind because of a new general counsel. This miscarriage of injustice has to be overturned and the original complaint reissued so I can have due process of law and have my day in court to argue in front of a judge.

Politics have no business in cases that are set to be heard by administrative judges and clearly I have been denied due to process of law and If I can't get justice heard I will appeal to the 9TH Circuit Court Of Appeals, justice has to be done and I will fight all the way to the United States Supreme Court. I am requesting the original complaint that the regional director issued be reissued and proceed to have a court date.

Exhibit L



**UNITED STATES GOVERNMENT**
# NATIONAL LABOR RELATIONS BOARD
**OFFICE OF THE GENERAL COUNSEL**
Washington, DC  20570

November 19, 2021

PARNELL COLVIN
6681 TARA AVE
LAS VEGAS, NV 89146-5104

> Re:    Laborers International Union of North
> America, Local 872, AFL-CIO (Various
> Employers, including the Employer-
> Members of Nevada Contractors
> Association / Associated General
> Contractors Association)
> Case 28-CB-221154

Dear Mr. Colvin:

Your appeal from the Regional Director's August 26, 2021 Order Severing Cases and Withdrawing Complaint Allegations has been carefully considered. The appeal is denied substantially for the reasons in the Regional Director's letter of August 26, 2021.

On appeal you assert that the merits of this case should not have been reconsidered as such reconsideration reversed previous instructions from the former General Counsel. That argument is rejected. The Acting General Counsel exercised his unreviewable final authority under Section 3(d) of the Act, which includes not only authority to decide whether to issue unfair labor practice complaints, but also, in some circumstances, authority extending beyond the point at which a complaint has issued, including a purely prosecutorial decision to withdraw a complaint. See, *Sheet Metal Workers International Association, Local Union 28, AFL-CIO*, 306 NLRB 981, 982 (1992). Since GC Memoranda 19-01, 19-04 and 19-06 were rescinded, it was proper for the Regional Director to revise his determination, reevaluate the evidence, and proceed according to current law and guidance. The Regional Director properly exercised his discretion in finding that extant law did not support that the Union violated its duty of fair representation.

Exhibit M

Laborers International Union of North
America, Local 872, AFL-CIO (Various
Employers, including the Employer-
Members of Nevada Contractors
Association / Associated General
Contractors Association)
Case 28-CB-221154                                                          -2

Accordingly, the appeal is denied.

Sincerely,

Jennifer A. Abruzzo
General Counsel

By: _____

Mark E. Arbesfeld, Director
Office of Appeals

cc:     CORNELE A. OVERSTREET                TOMMY WHITE
        REGIONAL DIRECTOR                    BUSINESS MANAGER
        NATIONAL LABOR RELATIONS             LABORERS' INTERNATIONAL
          BOARD                                UNION OF NORTH AMERICA
        2600 N CENTRAL AVE-STE 1400           LOCAL 872, AFL-CIO
        PHOENIX, AZ 85004-3099               2345 RED ROCK ST STE 330
                                             LAS VEGAS, NV 89146

        DAVID A. ROSENFELD, ESQ.             PENHALL COMPANY
        WEINBERG, ROGER &                    477 W UNIVERSITY AVE
          ROSENFELD, PC                      LAS VEGAS, NV 89103
        1001 MARINA VILLAGE PKWY
          STE 200
        ALAMEDA, CA 94501-6430

vrm

Exhibit M